[Civ. No. 3635.   Fourth Dist.   June 20, 1947.]

MARY MARLENE HOYT, a Minor, etc., et al., Respondents,
v. JACK LEE ROSENBERG, Appellant.

John W. Holler and H. J. Hunter for Appellant.

Monroe & McInnis for Respondents.

BARNARD, P. J.—This is an action for damages growing out of injuries received by Marlene Hoyt while playing a game.

The accident happened on March 28, 1945, in the alley at the rear of the home occupied by the plaintiffs.  The Hoyt family lived on a 50-foot lot on the east side of Twenty-eighth Street in San Diego, which street runs north and south.  The Rosenberg family lived on a 50-foot lot immediately to the

north. At the rear of the Hoyt yard was a picket fence 5 feet high, with a gate 3 feet wide leading into the alley. This gate swings inward and at the time of the accident was open. Across the alley from the Hoyt yard, to the east, was the Miller yard with a high board fence along the alley. A telephone pole stood in the alley near that fence.

At the time of the accident four children of these families were playing in this alley. These were Marlene Hoyt, the minor plaintiff, who then lacked 4 months of being 12 years old; her sister Annette, who was 8 years old; Jack Rosenberg, the defendant, who was 12½ years old; and his sister Connie, who was 8 years old. Until shortly before the accident Rosemary Hoyt, an older sister, who was 13 years old, had been playing with them but she had been called to the telephone.

These children were playing a variation of the old game of hide and seek, which is generally known by youngsters as "kick the can," the can used being an old coffee canister. Rosemary Hoyt, in her testimony, fully described how this game was customarily played. Briefly stated, the manner of playing was as follows: one of the players, who was selected as "it," would place the can in the middle of the alley and count to a prearranged number, thus allowing the other players to run and hide. They were limited, as a place of hiding, to four or five of the surrounding yards. The one who was "it" would then go in search of the others. If "it" saw another player, both would run for the can. If "it" got there first the other was a prisoner and must remain in the vicinity of the can, and "it" would continue until all players had thus been taken prisoner. However, if one of the other players succeeded in beating "it" to the can, that player would kick the can as far as he could, which would release the other prisoners, and all would again go and hide. "It" would then have to go and get the can, bring it back to the same place and start over. In order to obtain the most possible time in which to hide again, the one thus kicking the can would try to kick it as far as possible. Rosemary testified that they always kicked the can either north or south, along the alley; and that when the girls played there was a rule that the can should not be kicked over the fence because none of them were strong enough to kick it over the fence. She also testified that while the player who was seen would usually race "it" to the can, if either thought he could not make it he would stop and walk in; that it often developed into a race

as to which would get to the can first; that sometimes the race was pretty close; and that sometimes "it" would barely get there before the can was kicked by the other. This game had frequently been played by these children and was generally played by other groups of children throughout the city.

On the occasion here in question Marlene was "it" and the can had been placed on a spot near the center of the alley opposite the dividing line between the Hoyt and Rosenberg properties. This spot was 24 feet northerly from the open gate into the Hoyt yard, and was 19 feet northerly from the telephone pole by the Miller fence, on the easterly side of the alley. Marlene had caught the two younger children and while they were waiting, with the hope that Jack would come and kick the can and release them, Annette was standing immediately to the south of this telephone pole, on the east side of the alley, and Connie was leaning against the Hoyt fence immediately across the alley from her. Marlene was in the Hoyt back yard looking for Jack, who was hiding behind some chairs in the Rosenberg back yard. Jack saw her starting toward the other side of her own house and he immediately started to race for the can, running through a garage on the Rosenberg property, and thence some 25 or 30 feet to the can. When Marlene saw Jack start for the alley she also started to run, but having decided that she could not beat him she stopped at the Hoyt back gate. Jack kept on running and as he arrived at the can he kicked it, trying to kick it over the Miller fence. Unfortunately, his aim or execution was no better than that of some golf shots, and the can struck Marlene in the face, with the result that she lost the use of one eye.

Jack testified that Marlene was a good runner and could outrun him; that as he ran down and kicked the can he "didn't see anybody over there"; that as he was running "just as a flash" he saw Annette and Connie out of the corner of his eyes; that after he started to run he did not watch Marlene any more; that he knew that if she started to run she would go out of her back gate; that while a person could be seen through the pickets of the Hoyt fence he did not see Marlene; and that "I didn't see her, because I was looking at the can and because I didn't want to run by and miss it." Jack testified that he saw the can strike Marlene. While he also testified that when the can struck her she was "in the alley," it appears from other evidence that when she was struck she was standing "in the gateway."

There is little dispute in the evidence except with respect to the exact position of Marlene when she was struck, and it must be assumed that she was then standing in or very near the open gateway. The defendant, a 12-year-old boy, was running to kick this can, an object of the game, and as he was approaching from the north he would naturally kick it in a southerly direction, and equally naturally he would kick it while on a dead run. The essential question here was, and is, whether in so doing he was guilty of some negligent act or omission, judged by the standard of care that is reasonably to be expected of boys of similar age and development, under similar circumstances. The case was submitted to the jury under appropriate instructions, concerning which no complaint is made, and the jury returned a verdict for $27,000 in favor of the plaintiffs. The defendant has appealed from the ensuing judgment.

There is no dispute as to the general rules of law here applicable. ■ While a minor, like an adult, is required to exercise ordinary care he is only required to exercise that degree or amount of care that is ordinarily exercised by one of like age, experience and development (*Hernandez* v. *Murphy*, 46 Cal.App.2d 201 [115 P.2d 565]). The rule is thus stated in *19 California Jurisprudence 604: "[T]he ordinary care which a child of limited judgment and experience is called upon to exercise in a given situation is not the quantum of* care required of an adult under the same circumstances. A child is required to exercise only that measure of care which children of the same age, and under similar circumstances, ordinarily exercise." ■ Whether or not a minor has been negligent under a particular set of circumstances is ordinarily a question of fact. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674 [102 P.2d 422].)

■ The appellant contends that, under these rules, the evidence here is not sufficient to show negligence on his part, and that if any negligence existed the minor respondent was equally culpable and, therefore, guilty of contributory negligence.

Apparently recognizing that some degree of danger was inherent in the playing of this game, the respondents concede that the appellant should not have been held liable merely because he engaged in the game, and insist that this was not done. It is contended that his liability arose from the negligent manner in which he played the game and that the evi-

dence sufficiently discloses, under the rule above mentioned, that he failed to use ordinary care to avoid injury to the other children. In other words, it is thus contended that this appellant did something while playing this game that the ordinary boy of like age and experience would not have done, or that he failed to do something which such an ordinary boy would have done. In support of this contention it is argued that the appellant was a large boy for his age, with ''a rather remarkable grasp of the English language''; that he knew that the two smaller children had been caught and would be standing near the home base; that he violated a rule by attempting to kick the can over the Miller fence, rather than directly along the alley either to the north or to the south; that this was negligence because he could not see whether there was anyone on the other side of the Miller fence; that when he kicked the can he could have seen Marlene where she stood, if he had looked at all; that there was not a clear field ahead of him when he kicked the can as the two 8-year-old girls were in the alley between the can and the place where Marlene was standing; that he knew that Marlene might come into the alley and, if she did, she would come out of this gate; that, had he taken the trouble to look, he would have seen that Marlene was not running toward the can; that he could just as well have kicked the can northerly along the alley, instead of southerly toward the children; and that he knew the possible danger because he admitted that he realized fully that serious injury might result if one were struck by the can.

This argument is not fully sustained by the evidence. There is nothing in the record or in the testimony to sustain the contention that the appellant had a mental development that was unusual for a boy of his age. He did not admit, and we find nothing in the record to justify the inference, that before the accident happened he ''realized fully that serious injury might result if one were struck by the can.'' The evidence in this regard is that after Marlene was hit he went to help her, and that he then ''realized the possibility that that can having hit her might have hurt her pretty badly.'' While he knew that the two smaller children had been caught and were standing near, one was behind the telephone pole and the other was up against the fence on the other side of the alley. The way looked clear to him, as he testified, and even the respondents insist that Marlene had not entered the alley. While he did not look to see where Marlene was during th.

time he was running, it was natural that he would not do so and that he would bend all his efforts to winning the race to the can. While he knew that Marlene, if she entered the alley, would come through the gateway it would hardly be natural to expect him to delay his kicking of the can until she appeared. The essence of the game was to kick the can as quickly and as far as possible and anyone who has played or observed such a game knows that such a player, at the moment of accomplishing his object of kicking the can, would not stop to look around, and much less would he take a chance on stopping his run, turning around and going back in order to kick the can the other way. As a practical matter, in this game, the can is often kicked toward the approaching runner who is racing to get to the can first. Marlene's older sister indicated this when she testified that there was usually a race to get to the can first, that the race was often a close one, and that sometimes ''it'' would barely get there before the can was kicked. That the other players in this game expected Jack to kick the can in a southerly direction along the alley clearly, and without conflict, appears from the evidence. Marlene herself testified that she saw Jack start from his yard and saw him running toward the can; that when she saw she could not beat him to the can she stopped in her yard ''back a little ways from the gate''; that she ''stopped in the gateway''; and that she stopped because ''I was afraid I would get hit by the can if I ran out, so I just stayed back.'' It also appears that even the two 8-year-old girls knew what was to be expected in the circumstances as one of them stood behind the telephone pole on the one side of the alley, and the other up against the fence on the other side of the alley. The fact that all three of these girls, who were familiar with the game, knew and understood that in the natural course of playing the game Jack would kick the can southerly along the alley, very clearly appears. It is not material here that the appellant tried to kick the can over the Miller fence. While the girls had a rule among themselves that this would not be done it does not clearly appear that Jack was informed of this rule. In any event, any violation of this rule could not have been a proximate cause of the accident as Marlene was standing in the gateway on the other side of the alley. If the appellant had succeeded in breaking the rule the only effect would have been to have fully protected her from this accident.

If there was any negligence here it was in thus kicking this can southerly along this alley when Marlene was standing in the gateway of her yard. The kicking of the can in this direction was the very thing the appellant was supposed to do in playing this game and was the thing the other players expected him to do, and even Marlene, knowing this, remained in a position which she regarded as one of safety. It is argued that he did not use ordinary care to avoid injury because he failed to look, before he kicked, to see where Marlene was and that he could have seen her had he so looked. Not only is it unreasonable to expect a boy of that age to stop in such a moment in such a game, at the risk of losing his advantage, in order to look for something that was apparently outside his field of action, but if he had looked and had seen her it would naturally have appeared to him, as it seemed to her, that she was in a position of safety. If it could be assumed that an ordinary boy of that age would have looked and have seen Marlene in that position, it cannot reasonably be inferred that such an ordinary boy would have realized that she was in a position of danger, or that he would have refrained from following up his advantage by kicking the can in that general direction.

The fact that Marlene was not in the alley was an added reason, normally and naturally, why the appellant would not realize that any special danger existed. He would even have been expected to have kicked the can in that direction if Marlene had actually been in the alley running toward him and the can; and much less could he be reasonably expected to realize or expect that the can kicked along the alley between the fences would happen to go through the narrow opening of the gateway and inflict an injury on his opponent. Such things are possible but somewhat unusual even in that game with its natural and inherent danger. As a matter of fact, the thing that happened was the result of a danger that was inherent in this game and if any finding of negligence were to be here sustained, it should be on the real ground that it was dangerous and therefore negligence to play this game in the way it was supposed to be, and customarily was, played. However, in such an event the minor respondent would be equally negligent.

While the question as to whether a minor has been negligent in certain circumstances is ordinarily one of fact for the jury, an affirmative finding thereon must not only be supported by the evidence, with reasonable inferences therefrom, but it

must conform to and be in accordance with the established rule that a minor is expected to use, not the quantum of care expected of an adult, but only that degree or amount of care which is ordinarily used by children of the same age under similar circumstances. In deciding whether, in such a case, there has been a failure to use ordinary care to avoid injury to other children, the test is, and must be, not what an adult would have there done or what the results indicate should have been done, but what an ordinary child in that situation would have done.

Under these rules, it cannot be held that the evidence sustains this verdict and judgment. In *Briese* v. *Maechtle*, 146 Wis. 89 [130 N.W. 893, Ann.Cas. 1912C 176, 35 L.R.A.N.S. 574] a case similar in some respects to the instant case, although the game there being played was inherently less dangerous, the court used the following language, which is not inappropriate here:

". . . can any man truthfully say as he recalls the scene that the ten-year-old defendant in the present case was doing anything more or less than healthy boys of his age have done from time immemorial and will continue to do as long as the race retains its activity and love of innocent sport? It seems to us that this question can receive but one answer, and that in the negative."

Under established rules, the idea that this appellant should, or that the ordinary boy would, have seen Marlene and turned around and kicked this can in the other direction is fallacious, in view of the circumstances which here appear. Anyone so thinking not only does not know boys of that age, but either never played similar games, including "shinny," or played them too long ago. There is no room here for a reasonable difference of opinion as to what the normal and ordinary boy of that age would have done under the circumstances shown by this record. It cannot be reasonably inferred from the evidence that the appellant on this occasion and under these circumstances did "anything more or less than healthy boys of his age have done from time immemorial and will continue to do so long as the race retains its activity."

As the Wisconsin court further said in the case above cited: "The injury here was serious and deplorable, but the severity of it does not affect the character of the act which caused it, so far as the question of negligence is concerned." The serious injury here was an unfortunate accident which, if it could have been anticipated at all, must be attributed to the

natural danger inherent in this game and not to any lack of care which could reasonably be expected to have been exercised by this 12-year-old boy. The evidence being insufficient to show that he did or failed to do anything which would have been done or omitted by an ordinary boy of that age and experience, under these circumstances, it is insufficient to sustain the implied finding that he failed to use ordinary care to avoid injury to the minor respondent.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 14, 1947. Carter, J., voted for a hearing.