GLADNEY, Judge.
Paul Ettric Davis and his wife, Mary Jane McFarland Davis, parents of four year old Glenn Alan Davis, have brought this tort action for the recovery of damages from Allstate Insurance Company, the defendant herein, and the liability insurer of William Edward Verner, father of Billy Verner. It is alleged by plaintiffs that their son’s death, which occurred on October 6, 196S, was caused by an act of negligence on the part of Billy Verner who was engaged in a game of tackle football.
Allstate defended on the ground that Billy Verner was not guilty of negligence, and alternatively plead the contributory negligence of plaintiffs and their minor son, Mark Davis. Allstate also filed third party actions against plaintiff Paul Ettric Davis, individually, and as father and Administrator of the Estate of his minor son, Mark Davis, and against their liability insurer, Assurance Company of America; and against Reverend George Norman Tharpe, individually and as father and Administrator of the Estate of his minor son, Dennis Tharpe. Allstate also alternatively seeks contribution from the third party defendants.
The trial court rendered judgment on the principal demand in favor of Allstate, rejecting the demands of plaintiffs. The third party actions were rejected. Plaintiffs have appealed and appellee has also appealed for the purpose of preserving its alternative and third party demands.
The facts may be briefly stated: Engaged in the game with Billy Verner were Dennis Tharpe, Mark Davis and Terry Shields. The boys were aged 12 with the exception of Terry Shields, who was 13. The four boys had improvised a football field in the back yard of the Davis prop *750 erty. It was approximately 80 feet long and 50 feet wide with sides and goal lines marked by certain objects in the yard. The boundaries of the field left open 5 to 10 feet on the north and west sides and 2 to 5 feet on the south and east sides. Also present in the Davis back yard were Timmy Shields, age 3 years, and Glenn Alan Davis. These small boys had a football which they were playing with on the sidelines.
On the play giving rise to this litigation, Terry Shields and Billy Verner had possession of the ball and Mark Davis and Dennis Tharpe were defending against a possible score. As the game was played Billy Verner centered and passed the ball to Terry Shields who received it, faded back and completed a pass to Billy Verner near the goal line where he was tackled by Dennis Tharpe. The two boys fell on or rolled into Glenn Alan Davis, who had wandered into the area a few seconds before the pass was completed. Glenn got up crying and his brother Mark told him to go inside the house.
Glenn’s father, Sergeant Davis, was at home recuperating from a gunshot wound received while on Air Force duty. His wife was at work. Sergeant Davis was ambulatory at the time and was inside the Davis home while the game was being played. Following the play just mentioned Glenn went inside the house and his father gave him an aspirin and told him to lie down. Shortly thereafter he told his father that he was hungry but without eating he went back outside and later on got money from his father for ice cream. Either before or after the game, and possibly both times, Mark Davis and Dennis Tharpe played a game with the two small boys in which the larger boys lay on their backs on the grass and the small boys ran towards them, placing their heads down and upon catching their hands would flip them over their heads onto the grass. During the afternoon Glenn exhibited no visible or outward sign of injury and Mrs. Davis testified that she did not have knowledge of the injury until about 6:40 A.M. on the following morning when her husband told her Glenn had been pushed down the day before. She noticed that Glenn was fretful during the night and thought he had a cold and later because of certain symptoms she took him to the Barksdale Hospital. From there he was transferred to Doctors’ Hospital in Shreveport where he received emergency surgery by Dr. Philip Bonn, neurosurgeon. The doctor testified that both sides of the child’s brain were swollen and bruised. Glenn died on October 6 from the brain injury.
For cause of action it is alleged that the negligence of Billy Verner consisted of failing to keep a sharp look-out for the safety of Glenn Davis and in not seeing that the latter was moved out of any position of danger before recklessly running in the direction in which the child was playing. Further, it is asserted that the use of the football and the playing of the game in close proximity to the small children constituted the use of a dangerous instrumentality which act itself constituted negligence. By way of defense it is urged that the four boys were playing football in the manner that children of their ages normally do and that the accident resulted from no negligence. Alternatively, however, Allstate plead that the plaintiffs and their son, Mark Davis, were guilty of contributory negligence barring recovery, in that the older boys were playing football with the knowledge and consent of Sergeant Davis; and further, that Sergeant Davis was negligent in not properly supervising the play of the children. Mark Davis was also charged with contributory negligence in participating in the game and failing to take steps to protect his younger brother.
Counsel for plaintiffs have assigned error to the judgment of the trial court in holding that Billy Verner was not negligent, and that the use to which the football was being made does not constitute the use of a dangerous instrument in accordance with the doctrine set forth in Polk v. *751 Trinity Universal Insurance Company of Dallas, La.App., 115 So.2d 399 (1959).
The trial judge as reasons, inter alia, for his decision states:
“As has been stated by the appellate courts of this and other states, a child of twelve can be guilty of negligence, but his actions must be judged by his maturity and capacity to evaluate circumstances and he is not required to conform to the standard of behavior to be expected of an adult.
“Prosser’s Handbook of the Law of Torts (page 157)
“Plauche v. Consolidated Companies, (1958) 235 La. 692, 105 So.2d 269
“Gaspard v. Grain Dealers Mutual Ins. Co., et al, [La.App.] 131 So.2d 831
“Briese v. Maechtle, 146 Wis. 89, 130 N.W. 893, 35 L.R.A.(NS) 574
“Considering the present case in the light of this principle, this Court finds that these young boys, including Mark Davis, brother of the deceased, were playing in a normal manner for 12 year old children and that to run out for a pass as Billy Verner did and look back at his pursuer rather than all about in front of him for the presence of a small child in his path was normal for a boy of his age and intelligence. * * * ”
In discussing cases in which the conduct of children and aged persons are involved, a special standard of mental capacity is applied based upon what is reasonable to expect of one of the actor’s age, intelligence and experience. Prosser on Torts, 2d Ed. p. 124 and in his Handbook on the Law of Torts, (1964). The same authority at page 157 says:
“As to one very important group of individuals, it has been necessary, as a practical matter, to depart to a considerable extent from the objective standard of capacity. Children, although they are liable for their torts, obviously cannot be held to the same standard as adults, because they cannot in fact meet it. It is possible to apply a special standard to them, because ‘their normal condition is one of incapacity and the state of their progress toward maturity is reasonably capable of determination,’ and because there is a sufficient basis of community experience, on the part of those who have been children or dealt with them, to permit the jury to apply a special standard.
“Conceding this, it is nevertheless true that the capacities of children vary greatly, not only with age, but also with individuals of the same age; that it follows that no very definite statement can be made as to just what standard is to be applied to them. To a great extent it must necessarily be a subjective one. The formula which has been worked out, and which is customarily given to the jury, is that of ‘what it is reasonable to expect of children of like age, intelligence and experience’ * *
This rule has received consistent application in the courts of this state.
Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958);
Benedetto v. Travelers Insurance Company, La.App., 172 So.2d 354 (4th Cir. 1965, cert. denied).
An interesting case is Hoyt v. Rosenberg, 80 Cal.App.2d 500, 182 P.2d 234, 173 A.L.R. 883 (1947). The children involved were two 12 year old children who were playing a game by kicking a coffee canister. One of the children was struck in the face and suffered the loss of an eye when the other child kicked the can. The court in holding there was no liability stated:
“While the question as to whether a minor has been negligent in certain circumstances is ordinarily one of fact for the jury, an affirmative finding thereon must not only be supported by the evidence, with reasonable inferences therefrom, but it must conform to and be in accordance with the established rule *752 that a minor is expected to use, not the quantum of care expected of an adult, but only that degree or amount of care which is ordinarily used by children of the same age under similar circumstances. In deciding whether, in such a case, there has been a failure to use ordinary care to avoid injury to other children, the test is, and must be, not what an adult would have there done or what the results indicate should have been done, but what an ordinary child in that situation would have done.”
>}? ‡ * * * *
“Under established rules, the idea that this appellant should, or that the ordinary boy would, have seen Marlene and turned around and kicked this can in the other direction is fallacious, in view of the circumstances which here appear. Any one so thinking not only does not know boys of that age, but either never played similar games, including ‘shinny’, or played them too long ago. There is no room here for a reasonable difference of opinion as to what the normal and ordinary boy of that age would have done under the circumstances shown by this record. It cannot be reasonably inferred from the evidence that the appellant on this occasion and under these circumstances did ‘anything more or less than healthy boys of his age have done from time immemorial and will continue to do so long as the race retains its activity.’ (Quoting from Briese v. Maechtle, 146 Wis. 89, 130 N.W. 893, 35 L.R.A. (NS) 574, Ann.Cas. 1912C, 176).” [173 A.L.R. 883, 888],
The facts in the instant case disclose an absence of fault on the part of Billy Verner. We agree with the holding of the trial court that plaintiffs have failed to prove actionable negligence by Billy Verner and we find as did the trial court that the dangerous instrumentality doctrine as applied in Polk v. Trinity Universal Insurance Company, supra, is without application in this case.
Discussing, first the question of the negligence, vel non, of Billy Verner, we refer to the circumstances as determined. The boys were regularly playing tackle football and all four were approximately 12 years of age. Glenn Davis moved into the line of play only a few seconds before Billy Verner was tackled. Billy Verner testified that he was concentrating on catching the ball and did not see Glenn nor did he recall falling upon the small boy. Dennis Tharpe testified that when the tackle was made he made contact with the body of Glenn Davis. The evidence, therefore, created doubt as to whether Glenn Davis received the fatal injury at the time of the tackle, whether in fact the body of Billy Verner struck the child, or whether the injuries occurred when Mark Davis and Dennis Tharpe were flipping the two small children over their heads. Dr. Bonn, the neurosurgeon, testified that a slight injury could cause the type of brain contusions suffered by Glenn. The evidence sustains the holding that plaintiffs have failed to sustain the burden of proof and show that there was a causal connection between the football tackle and the injury which caused the death of Glenn Davis. Roberts v. M. S. Carroll Company, La.App., 68 So.2d 689 (2nd Cir. 1953); Johnson v. Kennedy, 235 La. 212, 103 So.2d 93 (1958); Livaccari v. United Jewish Appeal, Inc., La.App., 126 So.2d 67 (4th Cir, 1961)
We are in disagreement with the argument that the use of the football as in the instant case constituted the use of a dangerous instrumentality. This court applied the rule sought to be invoked by appellant in Polk v. Trinity Universal Insurance Company, supra. Therein two boys of 9 and 10 years of age were using a baseball and bat in a game sometimes called “flys and rollers”. One of the boys was engaged in batting the ball to the other and on one occasion the boy missed the ball and accidentally hit a 4 year old girl in the face causing her serious injuries. Because the baseball bat was so used the dangerous instrumentality rule was applied. *753 In other cases, the use of a toy pistol, a fishing pole, a sling shot, and a softball were held by the court as used were not dangerous instrumentalities. Fabre v. Lumbermens Mutual Casualty Company, La.App., 167 So.2d 448 (1st Cir. 1964 cert. denied); Toca v. Rojas, 152 La. 317, 93 So. 108 (1921); Wagner v. Barbin, 12 La.App. 640, 125 So. 766 (2nd Cir. 1930); Benedetto v. Travelers Insurance Company, La.App., 172 So.2d 354 (4th Cir. 1965).
In the instant case the body of Billy Verner is alleged to have caused the injury. It is difficult to conceive of a case in which the use of the body may be held to be within the dangerous instrumentality doctrine.
It is unnecessary to decide the charges of contributory negligence or give consideration to the third party demands which have been asserted for we hold actionable negligence has not been proven against Billy Verner.
For the foregoing reasons the judgment from which appealed is affirmed.
The cost of this appeal is taxed against appellants.