28207. HATCH et al. v. O'NEILL et al.

ARGUED SEPTEMBER 11, 1973 — DECIDED NOVEMBER 16, 1973 — REHEARING DENIED NOVEMBER 29, 1973.

*Eugene McCracken,* for appellants.

MOBLEY, Chief Justice. Andrew P. Hatch, a minor, suing through his father, Roddy J. Hatch, Jr., as next friend, and Roddy J. Hatch, Jr., individually, sued Michael O'Neill, a minor and three adults.

It was alleged that Michael O'Neill placed a rock in a described powerful slingshot, deliberately aimed the slingshot at the head of Andrew P. Hatch, and fired the sling shot from a distance of approximately three feet, causing the rock to strike Andrew P. Hatch in the right eye, which resulted in the loss of the eye.

A motion for summary judgment was filed as to the minor, Michael O'Neill, on the ground that he was nine years of age at the time of the occurrence, and would not be liable for a tort under the provisions of Code § 105-1806.

The plaintiffs filled a response to the motion for summary judgment, asserting that Code § 105-1806 violates the due process clauses of the State and Federal Constitutions, and also contending that such Code section does not protect a minor under the age of 13 from a suit for damages for a wilful tort.

The trial judge granted the motion for summary judgment and dismissed Michael O'Neill as a party defendant. The appeal is from that judgment.

1. Code § 105-1806 provides: "Infancy is no defense to an action for a tort, provided the defendant has arrived at those years of discretion and accountability prescribed by this Code for criminal offenses."

The appellants contend that this Code section, strictly contrued, does not prevent an action for tort against an infant under the age of criminal responsibility, and means only that a minor over the age of criminal accountability can not claim any lesser standard of care in its conduct than that of an adult. The appellants also contend that this Code section should be construed with Code § 105-204, which provides: "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation."

Code § 105-1806, in identical language, appeared in the first Code of this state. Code of 1863, § 2996. At that time the age of criminal responsibility was 14, or before that age if the child knew the distinction between good and evil, but never under the age of 10. Code of 1863, §§ 4190, 4191. The present age of criminal responsibility is 13. Ga. L. 1968, pp. 1249, 1270 (Code Ann. § 26-701). In the Code of 1863, as in the present Code, the section which is now 105-1806 is in the Chapter listing defenses to torts.

Code § 105-204 first appeared in the Code of 1895 (§ 2901). It was codified from *Western & A. R. v. Young,* 81 Ga. 397 (2) (7 SE 912, 12 ASR 320), which announced a rule for the determination of the

standard of care required of a child, when considering the question of contributory negligence of the child, in an action to recover damages for an injury to the child.

There is little case law in Georgia construing the meaning of Code § 105-1806. In *Central R. v. Brinson,* 70 Ga. 207 (5 d), this court held: "A person who is neither a lunatic, idiot nor insane, and who has arrived at fourteen years of age, or before that age, if such person knows the distinction between good and evil, is held responsible for crime; under ten years of age, he is not responsible; and he is equally responsible in cases of tort, provided he has reached those years of discretion and accountability prescribed by the Code for criminal offenses." This statement indicates that tort liability coincides with criminal liability, but the case did not deal with an action for tort against a minor.

The Court of Appeals, in *Brady v. Lewless,* 124 Ga. App. 858 (186 SE2d 310), with two Judges dissenting, held that Code § 105-1806 means that a minor under the age of 13 is immune from suit for tort, and distinguished the rule as to the negligence of a child in an action for damages because of injuries to the child. Certiorari was denied by this court.

It is our opinion that the Court of Appeals correctly interpreted the meaning of Code § 105-1806. Since this statute determines the policy of this state as to torts of minors under the age of criminal responsibility, it is immaterial what the rule is in other jurisdictions, or what the rule was at common law.

2. The appellants assert that Code § 105-1806 violates the due process clauses of the State and Federal Constitutions in that it deprives them of a property right without due process of law by barring them from the recovery of lawful damages from the minor child, regardless of his culpability, wanton act, and negligence, and regardless of any standard of care which could be imposed upon a minor of his age under similar circumstances, the severity and permanance of the injury inflicted, his resources to pay damages, and any other fact or circumstance.

The question of the immunity of an infant who is under the age of criminal responsibility from liability for torts is a reasonable subject for regulation by the legislative branch of government, and it is not a denial of due process of law to provide that no cause of action exists for torts committed by infants of such age.

The trial judge did not err in granting the motion for summary judgment and dismissing Michael O'Neill as a defendant.

*Judgment affirmed. All the Justices concur, except Gunter, Jordan and Ingram, JJ., who dissent.*

JORDAN, Justice, dissenting. I cannot see the logical distinction in saying that the 9-year-old here involved is capable under the law of being guilty of contributory negligence to the extent that it could bar his recovery in a tort action, and at the same time holding that he cannot be guilty of some degree of actionable or primary negligence. See my dissent in *Brady v. Lewless,* 124 Ga. App. 858, 860 (186 SE2d 310).

INGRAM, Justice, dissenting. This suit began when the appellants filed a complaint against Michael O'Neill, a nine-year-old minor, and three adults. The allegations indicated that the defendant fired a rock with a slingshot at a distance of some three feet from the head of the appellant, Andrew Hatch, striking Hatch's eye and causing him to lose the eye. Upon motion of the defendant minor, the trial court granted summary judgment on his behalf upon the ground that Code § 105-1806 provided immunity from suit in tort for minors under the age of criminal responsibility, which, as set forth in Code Ann. § 26-701, is thirteen. The central issue on appeal is whether under Georgia law an infant under the age of criminal responsibility is immune from tort liability.

The majority of this court has construed Code § 105-1806 to grant such immunity, and in doing so has followed the construction placed upon the statute by the Court of Appeals of Georgia in *Brady v. Lewless,* 124 Ga. App. 858 (186 SE2d 310). This decision, I believe, is in error in three respects, which are discussed below: (1) it fails to take into consideration the rule as prevailed at common law, Code § 105-1806 being a codification of the common law; (2) it fails to reconcile the anomalous principle that an infant under the age of criminal responsibility may be accountable for contributory negligence under a standard of care set forth in Code § 105-204; (3) and it fails to take into account the impact and implication of liability insurance upon suits against infants.

By an Act of the General Assembly, assented to December 9, 1858, provision was made for the election of three commissioners, "to prepare for the people of Georgia a Code, which would as near as practicable, embrace in condensed form, the laws of Georgia, whether derived from the common law, the Constitutions, the statutes of the State, the decisions of the Supreme Court, or the Statutes of England, of force in this State." Ga. L. 1858, p. 95. Code § 105-1806 first appeared in the 1861 Code of Georgia in § 2996 in the same language as it reads today: "Infancy is no defense to an action for a tort, provided the defendant has arrived at those years of discretion and accountability prescribed by this Code for

criminal offenses." Under the penal provisions of the 1861 Code, criminal responsibility of an infant was provided for in two separate sections: § 4190. "A person shall be considered of sound mind who is neither an idiot, a lunatic, or afflicted by insanity; or who hath arrived at the age of fourteen years, or before that age, if such person knows the distinction between good and evil"; and § 4191. "An infant under the age of ten years, whose tender age renders it improbable that he or she should be impressed with a proper sense of moral obligation, or be possessed of sufficient capacity deliberately to have committed the offense, shall not be considered or found guilty of any crime or misdemeanor."

In considering the meaning of these various provisions, inquiry must be made into the common law and the codified law prevailing at that time. No issue is taken with the exact meaning of the provisions of the penal law as of 1861. In the case of *Ford v. State*, 100 Ga. 63 (25 SE 845), the penal section as to the criminal responsibility of an infant below the age of ten was construed to mean a child of that age was conclusively presumed incapable of criminal guilt. Code Ann. § 26-701 now has the age of responsibility set at thirteen. What is demurred to is the inference this court has drawn, i. e., since the infant cannot commit a crime, he cannot commit a tort.

At common law, cases in which minors were sued for their torts were very rare. Sir Percy Winfield has suggested that the reason for the dearth of such cases was because minors were often not worth suing. Winfield, The Law of Tort, 96, 97 (2d Ed.). See also Stone, Liability for Damage Caused by Minors: A Comparative Study, 5 Ala. L. Rev. 1, 24. As a result the law of infant liability was slow in developing. Blackstone, in his commentaries, discusses infant liability in contract law but completely omits a parallel discussion in the area of torts. In criminal cases the common law rested its presumptions concerning children upon Biblically-sanctioned multiples of seven. Thus, below the age of seven a child was conclusively presumed incapable of committing a felony, while between the ages of seven and fourteen, the presumption was rebuttable. At and after the age of fourteen the presumption became conclusive that the child was capable of committing a crime, and he was subject to suffer conviction and penalties as an adult, even including capital punishment. Cooley's Blackstone, Vol. 1, p. 465. See also, *McRae v. State*, 163 Ga. 336 (136 SE 268). Significantly, this age, fourteen, was also the legal age at which a minor, if a male, could contract marriage, make a will,

and choose his guardian, and he was thereafter said to have reached his "years of discretion." Cooley's Blackstone, Vol. 1, p. 464. At common law criminal responsibility was therefore closely linked to moral blameworthiness, the ability of the infant to formulate the requisite malice and intent to do that which he recognized was morally wrong.

So it was with infant tort liability. Infants were liable for their torts at common law. In Jennings v. Rundall, 8 T. R. 335, 337 (101 Eng. Rep. 1419), Lord Kenyon said, "If an infant commit an assault, or utter slander, God forbid that he should not be answerable for it in a court of justice." See Holmes, The Common Law, p. 87; Landon, Pollock on Torts, p. 47; and Prosser, Torts, (3d Ed.) p. 1024, § 128. Pollock noted that at common law "an infant is certainly liable for all wrongs of omission as well as of commission in matters where he was, in the common phrase, old enough to know better." Landon, Pollock on Torts, supra, p. 47.

It is of significance that the law of torts as it prevailed in 1861 had not then attained its full flowering. The modern law of negligence was still in its infancy, and the few cases at common law dealing with infant tort liability were based upon prevailing concepts of fault, moral culpability, and deterrence of the wrongdoer. The early cases, therefore, all dealt with intentional wrongs. See Jennings v. Rundall, supra; Bullock v. Babcock, 3 Wend. 391 (N. Y.); Burns v. Hill, 19 Ga. 22; Hutching v. Engel, 17 Wis. 230 (84 AD 741); Prosser, Torts (4th Ed.) p. 996, § 134; Harper & James, Law of Torts, p. 657, § 8.13; and Bohlen, Liability in Tort of Infants and Insane Persons, 23 Mich. L. Rev. 9.

It is unnecessary to trace the history of tort liability here, its progression from concepts of trespass, with its notions of intent and moral responsibility, to negligence to the present law of strict liability in tort. See Gregory, Trespass to Negligence to Absolute Liability, 37 Va. L. Rev. 359; Edgerton, Negligence, Inadvertence, and Indifference; The Relation of Mental States to Negligence, 39 Harv. L. Rev. 849; and, Maitland, The Forms of Action at Common Law, pp. 65-68, 90. The point I am trying to make is that in 1861, against the backdrop of infant liability for tort as prevailed at common law, the concept of fault, upon which the codifiers drew up the Code of Georgia, was one which did not include modern concepts of negligence. Tort liability was, like the criminal law, based upon moral responsibility, the ability of an individual to recognize the moral consequences of his own act and to will the consequences of such act.

The reasoning of the majority and of the Court of Appeals in *Brady v. Lewless,* 124 Ga. App. 858 (186 SE2d 310), while plausible in itself, fails to take into account this historical setting of the statute, Code § 105-1806. The mandate to the commissioners who drafted the Code was that the common law as it then existed should be codified. From what has been said it is seen that the common law associated the age of criminal responsibility with the arrival at the "years of discretion," which words were found in both Blackstone and Code § 105-1806. These years were those in which a person, even though still a minor, was treated by the law as an adult insofar as his mental capacity was concerned; but, there was never any suggestion that a child below that age, being associated generally with insane persons, might be treated differently than adults in civil cases except insofar as it might appear that he or she lacked the capacity to form that mental state necessary to commit a tort at common law. Cp. McGuire v. Almy, 297 Mass. 323 (8 NE2d 760); and *Sauers v. Sack,* 34 Ga. App. 748 (131 SE 98). No conclusive presumptions against the formulation by an infant of such intent to commit a tort, under prevailing concepts of fault, existed at common law. It was a presumption of fact—not of law —which could be rebutted like any other. Thus, the statute recognized the *defense* of infancy, and not the *immunity* of infants from suits in tort.

Additionally, Code § 105-1806 was written into law without regard to the modern law of negligence. The statute by its terms does not bar actions against infants based on negligence. The General Assembly in 1895 impliedly recognized that infants could commit torts of negligence when it enacted present Code § 105-204, which provides: "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." The inconsistent rule by which this provision has been applied only in cases of an infant's contributory negligence has been treated at length by Mr. Justice Jordan in his dissenting opinion in *Brady v. Lewless,* 124 Ga. App. 858, 860, supra, and need not be repeated here. It should be added that in one of the leading American cases in this area of the law there was rejected any difference in the primary and contributory negligence of an infant. In Charbonneau v. MacRury, 84 N. H. 501, 512 (153 A 457, 73 ALR 1266), the court said, "As in the case of the physical defect of the blind or one-legged adult, so the mental incapacity imputable to the minor, being deemed capable of proof, is recognized as a factor

to be weighed in appraising the character of his conduct . . . Reasonable conduct is alike demanded of both. The rule of reasonable conduct is constant but the reasonably ascertainable defects of the actor, whether adult or minor, are circumstances to be considered in its application. In neither case does the law make any distinction between the conduct of an actor when charged with actionable fault and when charged with contributory negligence." See also, Neal v. Gillett, 23 Conn. 437; Briese v. Maechtle, 146 Wis. 89 (130 NW 893); Hoyt v. Rosenberg, 80 Cal. App. 2d 500 (182 P2d 234, 173 ALR 883); and, Note, 79 U. of Pa. L. Rev. 1153.

In addition, the rule here announced, that infants under the age of criminal responsibility are immune from tort liability, though their contributory negligence may be used in mitigation of damage claims, is directly in conflict with modern trends in tort law which has seen the slow demise of contributory negligence in favor of absolute liability or full compensation for harms done, as in modern workmen's compensation and products liability law. See James, The Qualities of the Reasonable Man in Negligence Cases, 16 Missouri L. Rev. 1; James and Dickson, Accident Proneness and Accident Law 63, Harv. L. Rev. 769; and also Fletcher, Fairness and Utility in Tort Theory, 85 Harv. L. Rev. 537.

Finally, the aims of modern tort law, compensation of innocent victims of wrongs and distribution of loss, are furthered by the advent of accident liability insurance. The impact of insurance has been felt with respect to minors, e.g., with infant drivers where the loss is covered by reason of omnibus coverage clauses in policies of others (generally parents) and distributed among the insured motoring public. It has been indicated that in such cases the central factor considered in determining infant liability has not been the penalty or burden upon children, for such was non-existent, but rather "the extent to which the motoring public and its beneficiaries ought to compensate those who are injured by the very serious extra accident hazard created by the youthful driver." James, Accident Liability Reconsidered: The Impact of Liability Insurance, 57 Yale L. J. 549, 555. This same reasoning applies to tort liability of infants with respect to activities other than driving a car, where the penalty or burden on the child also is non-existent, and where the loss to the injured may be borne by insurance purchased by parents of the infant tortfeasor, such as in broad homeowner policies.

Thus, by reason of the foregoing, I believe this statute (Code § 105-1806) should not be construed by this court as a grant of

immunity for tort liability to minors under the age of criminal responsibility.

I am authorized to state that Justice Gunter concurs in this dissent.