LISA CARRILLO, an Infant, by Her Parent and Natural Guardian, PETER CARRILLO, et al., Appellants, *v.* JOHN O. KRECKEL, an Infant by the Guardian of His Person and Property, BONNIE M. KRECKEL, et al., Respondents.

Fourth Department, March 4, 1974.

*Gallo & Iacovangelo* (*Sanford Robert Shapiro* of counsel), for appellants.

*Johnson, Reif & Mullan, P. C.* (*Samuel G. Brundage* and *George A. Schell* of counsel), for John O. Kreckel, respondent.

*Zurett, Sullivan, Smith, Gough & Skipworth* (*Gary E. Smith* of counsel), for Craig Wollesen, respondent.

MOULE, J. P. The question presented on this appeal is whether a 14-year-old boy, participating in a street game or frolic with another boy of the same age, can be held liable to a bystander injured by the other boy's errant toss of a horseshoe.

On May 7, 1969, infant defendant John O. Kreckel showed a specially-manufactured pitching horseshoe, which he had found, to infant defendant Craig Wollesen and demonstrated to him that it would create sparks when slid or tossed in the street. The two boys then stood approximately 40 to 50 feet apart in the middle of Landvale Park, a public street in the Town of Irondequoit, New York, and began tossing or sliding the horseshoe back and forth to each other, attempting to cause sparks to fly on each throw.

This frolic continued from 5 to 15 minutes during which time infant plaintiff Lisa Carrillo, a 13-year-old girl, was seated some 35 feet away from defendant Wollesen on the grassy area between the street and the sidewalk. She was not participating in the game but she was watching what was going on and occasionally talked to the boys while they played.

During the period prior to the accident, each of the boys' horseshoe tosses had been accurate. However, on one toss from defendant Wollesen to defendant Kreckel, the horseshoe slipped or got caught in Wollesen's hand, rolled on its edge, bounced and struck plaintiff on the side of her head near the temple. Wollesen yelled, "Look out," but the plaintiff was not watching and was unable to avoid being hit.

As a result of the accident, she required surgery and commenced an action against both boys to recover for her personal injuries. Defendant Kreckel moved at Special Term for summary judgment on the ground that it was Wollesen's conduct

that proximately caused plaintiff's injury and that he was in no way responsible. His motion was granted and plaintiff has appealed.

The initial issue confronting this court is whether summary relief may properly be granted in a negligence action where plaintiff asserts that defendant's mere participation in a frolic proximately caused her injuries. Should this question be answered in the affirmative, we must then determine whether Kreckel's conduct was, in fact, a proximate cause of the accident.

Summary judgment is not granted where arguably there are material and triable issues of fact (*Glick & Dolleck* v. *Tri-Pac Export Corp.*, 22 N Y 2d 439; *Sillman* v. *Twentieth Century-Fox*, 3 N Y 2d 395, 404) and, since negligence actions normally raise many factual issues, they are not readily disposed of by summary judgment (*Hajder* v. *G. & G. Moderns*, 13 A D 2d 651). However, in cases such as this one, where the cause of the accident is undisputed, the question as to whether any act or omission proximately caused it may be decided by the court as a matter of law (*Colban* v. *Petterson Lighterage & Towing Corp.*, 19 N Y 2d 794; *Tsitsera* v. *Hudson Tr. Corp.*, 14 N Y 2d 855; *Rivera* v. *City of New York*, 11 N Y 2d 856; cf. *Bethlehem Steel Co.* v. *Turner Constr. Co.*, 2 N Y 2d 456).

In considering the presence or absence of proximate cause, we must first analyze whether defendant Kreckel owed any legal duty to the plaintiff, the violation of which resulted in her injury. Prosser has said that " duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." (Prosser, Law of Torts [4th ed.], § 53.) Inherent in the concept of duty is the obligation to use due care when another is within the zone of apparent danger. If the injured party is not within this zone, he is not a foreseeable plaintiff and his injury cannot be legally or proximately caused by the act or omission of the defendant. Mr. Justice (then Judge) Cardozo has characterized this concept in the following manner: " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension ". (*Palsgraf* v. *Long Is. R.R. Co.*, 248 N. Y. 339, 344.)

Similar situations have arisen where plaintiffs were injured by golfers. In cases dealing with this subject, it has been held that if the distance and angle are great enough so as not to be within the reasonably intended course of the golf shot, the danger is not foreseeable and, therefore, the golfer's shot is not the

legal or proximate cause of the injury (*Jenks* v. *McGranaghan,* 30 N Y 2d 475; *Nussbaum* v. *Lacopo,* 27 N Y 2d 311).

In determining the existence of foreseeability, the standard of care to which a person will be held is critical. In this respect there are important variables, such as the age of the person, the place of the accident, and the activity in which the defendant is participating in determining whether the plaintiff or defendant should bear the loss resulting from the injury. This determination is one of social policy, the basic tenet upon which questions of duty are based (Prosser, Law of Torts [4th ed.], § 42).

It is recognized in New York that children of different ages play different games which may injure a participant or a spectator (*Turano* v. *City of New York,* 17 A D 2d 191; *Bennett* v. *Board of Educ. of City of N. Y.,* 16 A D 2d 651, affd. 13 N Y 2d 1104; *Lutzker* v. *Board of Educ. of City of N. Y.,* 262 App. Div. 881, affd. 287 N. Y. 822; *Kantor* v. *City of New York,* 251 App. Div. 454). However, the best analyses of a child's duty in this type of situation appear in cases from Wisconsin and California.

In *Briese* v. *Maechtle* (146 Wis. 89), two school boys were playing "time-honored and innocent games of youth" in a school yard when one ran into the other causing the latter to suffer a serious injury. The court emphasized that when a child runs and plays in a school yard, he partakes in a "lawful and even laudable act" which should be encouraged. The court also expressed fear that, if children were to be held liable for damages resulting from accidents occurring during play, it would not only open the door for a new and vast field of litigation, but would also "make it necessary for children to stand about the school yard with folded hands * * * for fear they might negligently brush against one of their fellows and become liable." (*Briese* v. *Maechtle,* 146 Wis. 89, 91, *supra.*)

In *Hoyt* v. *Rosenberg* (80 Cal. App. 2d 500) infant defendant, a 12½-year-old boy, and infant plaintiff, a 12-year-old girl were playing a game in an alley, the object of which was to kick a can as far as possible. During the course of the game, defendant kicked the can which struck plaintiff resulting in the loss of an eye. The court, judging the boy by the standard of care which is reasonably to be expected of boys of similar age and development under similar circumstances, found that "it cannot reasonably be inferred that * * * an ordinary boy would have realized that she [plaintiff] was in a position of danger, or that he would have refrained from * * * kicking

the can in that general direction." (*Hoyt* v. *Rosenberg,* 80 Cal. App. 2d 500, 506, *supra.*)

Applying these principles to the horseshoe throwing involved herein, it is clear that 14-year-old boys will invent and continue to participate in frolics of this nature and will not perceive the dangers which may result. Certainly, infants must abstain from negligent acts and thereby exercise the degree of care to which children of their age, experience, intelligence and ability are capable (*Weidenfeld* v. *Surface Transp. Corp. of N. Y.,* 269 App. Div. 341). However, unless the frolic chosen is so inherently dangerous that mere participation therein is negligence, the child should only be held liable for an act which was a deviation from the frolic to such an extent that it would put the child on notice that an unreasonable risk of injury was involved to either other participants or spectators. So far as defendant Kreckel, the non-thrower, is concerned, it is clear that there was nothing that should have given him notice that anyone was in danger. Therefore, as a matter of law, his actions could not be a proximate cause of plaintiff's injury and plaintiff's cause of action against him was properly dismissed.

Assuming, *arguendo,* that tossing or sliding horseshoes on a public street is negligent per se, then it would still appear that one who remains at the frolic as a spectator assumes the same risk as the participants. Authority for this position is found in *Lutzker* v. *Board of Educ. of City of N. Y.* (262 App. Div. 881, affd. 287 N. Y. 822, *supra*) wherein a boy standing near a stickball game was struck by the stick used in the game when it slipped out of the batter's hands. The court in holding against defendant as a matter of law said "the risks of the game were plainly visible and were assumed by the infant plaintiff".

The order should be affirmed.

CARDAMONE, SIMONS, MAHONEY and DEL VECCHIO, JJ., concur.

Order unanimously affirmed, without costs.