DeLuca et al., Appellees and Cross-Appellants, *v.*
Bowden et al., Cross-Appellees; Ayers, Appellant.

[Cite as DeLuca v. Bowden (1975), 42 Ohio St. 2d 392.]

(No. 74-512—Decided June 4, 1975.)

*Mr. Jack M. Lenavitt* and *Ms. Julia K. Casey*, for appellees and cross-appellants, *Messrs. Eastman, Stichter, Smith & Bergman, Mr. Richard E. Antonini, Messrs. Finn, Manahan & Pietrykowski* and *Mr. Thomas J. Manahan*, for cross-appellees.

*Messrs. Robison, Curphey & O'Connell* and *Mr. Daniel M. Phillips*, for appellant.

Stern, J. In *Holbrock* v. *Hamilton Distributing, supra,* this court held that a child under the age of seven is conclusively presumed to be incapable of contributory negligence. Our goal in that case, stated at page 189, was ''a

clear and simple rule which we believe will reach just and accurate results while also achieving a desirable judicial economy.''

The instant case presents the question of whether a child under the age of seven is liable for primary negligence or for an intentional tort. Appellees suggest that our decision in *Holbrock* does not necessarily require that children of tender years be considered free of liability for primary negligence. They argue first that a child may more easily comprehend his own acts than the acts of others, and second, that incapacity for contributory negligence is grounded in a policy of imposing a higher standard of care for the protection of injured children. The former argument is wholly speculative, and the distinction it suggests between primary and contributory negligence is simplistic. The acts which constitute negligence are the same, whether that negligence is primary or contributory, and so too is the level of capacity and understanding necessary to a finding of negligence.

Appellees argue that lack of capacity for contributory negligence, as found in *Holbrock*, is grounded in a policy of imposing a higher standard of care for the protection of children. That argument has some merit. However, this is because we recognize that children, especially children of tender years, gradually acquire the capacity to understand and appreciate the consequences of their acts as they acquire age and experience. Only with some maturity does a child begin to realize that his choice of acts may injure himself or others, and only then can it be said that he possesses the capacity to act ''reasonably.'' The practical need for some simple and just rule is the same in this case as in *Holbrock*, and we adhere to the rule stated therein.

The issue presented in *Holbrock* was whether a child under the age of seven was capable of contributory negligence as a matter of law. As this court pointed out, three choices of law were presented by the decisions from other jurisdictions. A similar choice among three rules of law is presented in fashioning a rule for determining the liability of a child under the age of seven for an intentional

tort. The first is that a child under seven years of age is conclusively presumed to be incapable of harmful intent. *Queen Ins. Co.* v. *Hammond* (1965), 374 Mich. 655, 132 N. W. 2d 792; see *Johnson* v. *Butterworth* (1934), 180 La. 586, 157 So. 121. Cf. *Hatch* v. *O'Neill* (1973), 231 Ga. 446, 202 S. E. 2d 44. The second is that a child of any age may be liable for an intentional tort, and that the age of the child is relevant only insofar as determining whether the child knew with substantial certainty that his intentional act would bring about a harmful or offensive contact. *Garratt* v. *Dailey* (1955), 46 Wash. 2d 197, 279 P. 2d 1091; *Horton* v. *Reaves* (Colo. 1974), 526 P. 2d 304; *Ellis* v. *D'Angelo* (1953), 116 Cal. App. 2d 310, 253 P. 2d 675. The third is that the child is strictly liable for trespass if he actually intended the physical act which caused the injury. *Seaburg* v. *Williams* (1958), 16 Ill. App. 2d 295, 148 N. E. 2d 49.

The basic dilemma of all these cases is that a child of tender years has only some dim and imponderable responsibility for his acts—and yet those acts, as those of an adult, may cause injury to others. It is probably inevitable as a part of growing up that in rare cases a child will cause severe injuries to others. Yet it is most difficult to attach blame to a child of tender years for those injuries in any sense comparable to the blame attachable to an adult, whom we hold responsible for his acts. Our laws and our moral concepts assume actors capable of legal and moral choices, of which a young child is incapable. See Bohlen, Liability in Tort of Infants and Insane Persons, 23 Mich. L. Rev. 9. For that reason, a child under seven years of age was at common law considered incapable of criminal responsibility. For the same reason, we cannot accept those rules which hold a child strictly liable, or which permit a jury to find liability, in cases of intentional tort. Our choice is between rules which permit the imposition of a legal judgment upon a young child for his intentional acts, and a rule which holds that members of society must accept the damage done by very young children to be no more subject to legal action than some force of nature or act of God. Our choice

is the latter rule. The same public policy considerations which led this court in *Holbrock* to hold that children under the age of seven are not liable for contributory negligence, convince us that children under the age of seven also should not be held liable for intentional torts.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN and P. BROWN, JJ., concur.

W. BROWN, J., concurs in the syllabus and judgment.
CELEBREZZE, J., dissents.

WILLIAM B. BROWN, J., concurring. Although I concur in the syllabus and judgment, I do so on policy grounds only, and not for the reasons stated in the majority opinion.

That opinion, in effect, grants absolution to all persons under seven, after proposing that young children should not be *blamed* for their misdeeds.

That premise is based upon the comparison of infant mischief with harm caused by an act of God, *vis major*, and other natural phenomena. I suggest that such comparison is faulty inasmuch as in the first instance there is a source for recovery, a person, and in the latter, no such source or available defendant. See *United States, ex rel. Mayo*, v. *Satan and his Staff* (W. D. Pa. 1971), 54 F. R. D. 282.

CELEBREZZE, J., dissenting. The majority today determines that a child under the age of seven years is not legally responsible for his intentional or negligent conduct. We are to look upon this conduct as akin to the forces of nature or acts of God. If I read the rationale adopted by the majority correctly, we make this policy decision because it would be unfair to attach the degree of blame leveled at an adult to an infant, since his capacity to understand and appreciate the consequences of his acts is in the early stages

of development and is only gradually acquired with age and experience.[2]

First, there is no discussion directly to the question of who must bear the loss. When, as here, the choice is between an innocent, minor victim and the infant who fired the BB-gun which injured him, I choose to lay the responsibility on the doorstep of the infant-perpetrator, or those who should be held to answer for him. (In this case actions against the parents were dismissed.)

Second, and related to the first point, this is not an area easily separated into well-defined categories. There is a well-recognized line of case law supporting the position that age is only of consequence in determining what an infant knows, and thus whether the requisite intent is present. If the child does not have some awareness of the natural consequences of his intentional acts, liability will not attach. *Horton* v. *Reaves* (Colo. 1974), 526 P. 2d 304; *Garratt* v. *Dailey* (1955), 46 Wash. 2d 197, 279 P. 2d 1091. .

The jury system should not be presumed to be unable to handle a question such as this. The rationale offered in *Holbrock* v. *Hamilton Distributing* (1967), 11 Ohio St. 2d 185, 189, that "* * * the conclusive presumption approach * * * provides a clear and simple rule which we believe will reach just and accurate results while also achieving a desirable judicial economy," seems to me to ignore obvious, and recurring problems.[3]

---

[2]Ages 4-8 usually find creative expansion—autonomous, value-setting, ego-ideals aspect of task. Charlotte Buhler, Genetic Aspects of the Self. Ann. New York Acad. Sci. (1962), 115, 730-764. P. 755. See, generally, Stone, L. Joseph and Joseph Church. Childhood and Adolescence (3 Ed.). New York: Random House (1973); Piaget, Jean. The Moral Judgment of the Child. New York: Harcourt, Brace (1932).

[3]The most obvious problem is the differing rates of development which are natural in infants, e. g. Piaget's second level of cognitive development—preparation for organization of concrete operations: "Preparational representation" (2-7) marked by beginning of representational thought and intuition. According to most theorists, children (from Western cultures) are making moral or negative-positive decisions in most cases by kindergarten age (5-6). Piaget, Jean. The Construction of Reality in the Child (translated by Margaret Cook). New

398

Finally, the problems I refer to seem clear from an examination of the facts before us. Here, we have two infants with a BB-gun, injuring a third minor. As Douglas, J., said in *Peak* v. *United States* (1957), 353 U. S. 43, 46, "common sense often makes good law." Common sense tells me that these two six-year-olds, probably first-graders, have been exposed to guns and what guns do since they began to notice television. To say that they are conclusively presumed to have no awareness of the natural consequences of pointing and firing a rifle is to ignore common sense as well as common experience.

In the same vein, while admittedly conjectural, I would find it difficult to vote for a rule which leaves society prey to the precocious or malicious among our infant society. We admit to, and protect against, the malicious and dangerous in the adult population, and yet we would dismiss the same conduct in their progeny under the age of seven years as acceptable conduct because of the lack of experience and capacity natural to infancy. Also, those same parents could be expected to effectively inculcate this idea in their young, with possible ominous results. In my opinion, there are too many exceptions inherent in differing degrees of development for the conclusive presumption rule to be equitable, and we must recognize all aspects of this problem.

For those reasons, I respectfully submit that our jury system is adequate, and should determine the effect of infancy on liability for intentional acts.

York: Basic Books, 1954; see, also, Inhelder, Barbel, and Jean Piaget. The Growth of Logical Thinking from Childhood to Adolescence. New York: Basic Books, 1958. See, generally, Pikunas, Justin. Human Development: A Science of Growth. New York: McGraw-Hill, 1969.