FLORENCE A. McGUIRE *vs.* DOROTHY B. ALMY.

Essex.    March 2, 1937. — May 25, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Insane Person.    Actionable Tort.    Assault and Battery.*

An insane person is liable for an intentional assault.
The evidence warranted a finding that a nurse, trying to disarm an insane person, had not assumed the risk of an assault by him.

TORT.    Writ in the Superior Court dated December 6, 1932, and afterwards amended.

The action was tried before *Cox,* J., who denied a motion

that a verdict be ordered for the defendant, and reported the case after a verdict for the plaintiff in the sum of $1,500.

*J. E. Farley,* for the defendant.

*J. P. Kane,* for the plaintiff.

Qᴜᴀ, J. This is an action of tort for assault and battery. The only question of law reported is whether the judge should have directed a verdict for the defendant.

The following facts are established by the plaintiff's own evidence: In August, 1930, the plaintiff was employed to take care of the defendant. The plaintiff was a registered nurse and was a graduate of a training school for nurses. The defendant was an insane person. Before the plaintiff was hired she learned that the defendant was a "mental case and was in good physical condition," and that for some time two nurses had been taking care of her. The plaintiff was on "twenty-four hour duty." The plaintiff slept in the room next to the defendant's room. Except when the plaintiff was with the defendant, the plaintiff kept the defendant locked in the defendant's room. There was a wire grating over the outside of the window of that room. During the period of "fourteen months or so" while the plaintiff cared for the defendant, the defendant "had a few odd spells," when she showed some hostility to the plaintiff and said that "she would like to try and do something to her." The defendant had been violent at times and had broken dishes "and things like that," and on one or two occasions the plaintiff had to have help to subdue the defendant.

On April 19, 1932, the defendant, while locked in her room, had a violent attack. The plaintiff heard a crashing of furniture and then knew that the defendant was ugly, violent and dangerous. The defendant told the plaintiff and a Miss Maroney, "the maid," who was with the plaintiff in the adjoining room, that if they came into the defendant's room, she would kill them. The plaintiff and Miss Maroney looked into the defendant's room, "saw what the defendant had done," and "thought it best to take the broken stuff away before she did any harm to herself with it." They sent for one Emerton, the defend-

ant's brother-in-law. When he arrived the defendant was
in the middle of her room about ten feet from the door,
holding upraised the leg of a low-boy as if she were going
to strike. The plaintiff stepped into the room and walked
toward the defendant, while Emerton and Miss Maroney
remained in the doorway. As the plaintiff approached the
defendant and tried to take hold of the defendant's hand
which held the leg, the defendant struck the plaintiff's
head with it, causing the injuries for which the action was
brought.

The extent to which an insane person is liable for torts
has not been fully defined in this Commonwealth. *Dickin-
son* v. *Barber*, 9 Mass. 225, turned upon questions of evi-
dence in an action for slander. However, the implication
of the case seems to favor liability. In *Lawton* v. *Sun
Mutual Ins. Co.* 2 Cush. 500, at page 516, it is said that one
"bereft of reason and judgment, and the use of his moral
powers and intellectual faculties . . . is no longer a re-
sponsible being . . . and his acts must be considered as
pure accidents." In *Brown* v. *Howe*, 9 Gray, 84, it was
held that the guardian of a lunatic cannot credit himself
in his probate account with a sum intended to represent
his personal loss from the negligent burning of his house
by his ward. Here it seems to have been assumed that
an action at law might lie. In *Morain* v. *Devlin*, 132 Mass.
87, this court said, through Chief Justice Gray, "By the
common law, as generally stated in the books, a lunatic is
civilly liable to make compensation in damages to persons
injured by his acts, although, being incapable of criminal
intent, he is not liable to indictment and punishment," cit-
ing numerous cases (page 88). But the actual decision
went no further than to hold the lunatic, as a landowner
receiving the benefits of ownership, liable for the defective
condition of his premises. In *Daniels* v. *New York, New
Haven & Hartford Railroad*, 183 Mass. 393, *Sponatski's Case*,
220 Mass. 526, and *Tetrault's Case*, 278 Mass. 447, the rule
was laid down that where an accident causes insanity, and
while insane the victim takes his own life, the causal con-
nection between the accident and the death is broken by

the voluntary act of the insane person, if he entertains the purpose of causing his death and understands the physical effect of his acts, even though his mind is so far impaired that he can no longer form sound judgments or weigh the reasons which should induce him to refrain from the act; but that causal connection is not broken if the act results from uncontrollable impulse, delirium or frenzy without conscious volition. A somewhat similar rule has been worked out for determining when an insane person has committed suicide within the meaning of a clause in an insurance policy which excludes liability for suicidal death. *Dean* v. *American Mutual Life Ins. Co.* 4 Allen, 96. *Cooper* v. *Massachusetts Mutual Life Ins. Co.* 102 Mass. 227. These accident and insurance cases are not controlling in the present case, for here the question is not one of causation, but is a question as to how far the subjective standard is admissible as governing the obligations of an insane person to others.

Turning to authorities elsewhere, we find that courts in this country almost invariably say in the broadest terms that an insane person is liable for his torts. As a rule no distinction is made between those torts which would ordinarily be classed as intentional and those which would ordinarily be classed as negligent, nor do the courts discuss the effect of different kinds of insanity or of varying degrees of capacity as bearing upon the ability of the defendant to understand the particular act in question or to make a reasoned decision with respect to it, although it is sometimes said that an insane person is not liable for torts requiring malice of which he is incapable. Defamation and malicious prosecution are the torts more commonly mentioned in this connection. A number of illustrative cases appear in the footnote.* These decisions are rested more

---

* *McIntyre* v. *Sholty*, 121 Ill. 660. *Woods* v. *Brown*, 93 Ind. 164. *Behrens* v. *McKenzie*, 23 Iowa, 333. *Seals* v. *Snow*, 123 Kans. 88. *Young* v. *Young*, 141 Ky. 76. *Phillips' Committee* v. *Ward's Administrator*, 241 Ky. 25, 30. *Cross* v. *Kent*, 32 Md. 581. *Feld* v. *Borodofski*, 87 Miss. 727. *Jewell* v. *Colby*, 66 N. H. 399. *Williams* v. *Hays*, 143 N. Y. 442. *Moore* v. *Horne*, 153 N. C. 413. *Ward* v. *Conatser*, 63 Tenn. 64. *Morse* v. *Crawford*, 17 Vt. 499. *Shedrick* v. *Lathrop*, 106 Vt. 311, 317. *Kusah* v. *McCorkle*, 100 Wash. 318. *Donaghy* v. *Brennan*, 19 N. Z. L. R. 289. *Stanley* v. *Hayes*, 8 Ont. Law

upon grounds of public policy and upon what might be called a popular view of the requirements of essential justice than upon any attempt to apply logically the underlying principles of civil liability to the special instance of the mentally deranged. Thus it is said that a rule imposing liability tends to make more watchful those persons who have charge of the defendant and who may be supposed to have some interest in preserving his property; that as an insane person must pay for his support, if he is financially able, so he ought also to pay for the damage which he does; that an insane person with abundant wealth ought not to continue in unimpaired enjoyment of the comfort which it brings while his victim bears the burden unaided; and there is also a suggestion that courts are loath to introduce into the great body of civil litigation the difficulties in determining mental capacity which it has been found impossible to avoid in the criminal field.

The rule established in these cases has been criticized severely by certain eminent text writers both in this country and in England, principally on the ground that it is an archaic survival of the rigid and formal medieval conception of liability for acts done, without regard to fault, as opposed to what is said to be the general modern theory that liability in tort should rest upon fault. Notwithstanding these criticisms, we think that as a practical matter there is strong force in the reasons underlying these decisions. They are consistent with the general statements found in the cases dealing with the liability of infants for torts, *Sikes* v. *Johnson*, 16 Mass. 389, *Homer* v. *Thwing*, 3 Pick. 492, *Slayton* v. *Barry*, 175 Mass. 513, 514, *Dow* v. *Lipsitz*, 283 Mass. 132, 134, including a few cases in which the child was so young as to render his capacity for fault comparable to that of many insane persons, *Huchting* v. *Engel*, 17 Wis. 230, *Briese* v. *Maechtle*, 146 Wis. 89, *Gillespie* v. *McGowan*, 100 Penn. St. 144, 149, *Peterson* v. *Haffner*,

Rep. 81. For a case *contra*, decided under the principles of the civil law, see *Yancey* v. *Maestri*, 155 So. 509. There are more or less conflicting *dicta* in England: *Weaver* v. *Ward*, Hob. 134; *Mordaunt* v. *Mordaunt*, L. R. 2 P. & D. 109, 142; *Hanbury* v. *Hanbury*, 8 T. L. R. 559, 560; *Emmens* v. *Pottle*, 16 Q. B. D. 354, 356.

6 Mart. (Ind.) 130, *Stephens* v. *Stephens*, 172 Ky. 780. Fault is by no means at the present day a universal prerequisite to liability, and the theory that it should be such has been obliged very recently to yield at several points to what have been thought to be paramount considerations of public good. Finally, it would be difficult not to recognize the persuasive weight of so much authority so widely extended.

But the present occasion does not require us either to accept or to reject the prevailing doctrine in its entirety. For this case it is enough to say that where an insane person by his act does intentional damage to the person or property of another he is liable for that damage in the same circumstances in which a normal person would be liable. This means that in so far as a particular intent would be necessary in order to render a normal person liable, the insane person, in order to be liable, must have been capable of entertaining that same intent and must have entertained it in fact. But the law will not inquire further into his peculiar mental condition with a view to excusing him if it should appear that delusion or other consequence of his affliction has caused him to entertain that intent or that a normal person would not have entertained it.

We do not suggest that this is necessarily a logical stopping point. If public policy demands that a mentally affected person be subjected to the external standard for intentional wrongs, it may well be that public policy also demands that he should be subjected to the external standard for wrongs which are commonly classified as negligent, in accordance with what now seems to be the prevailing view. We stop here for the present, because we are not required to go further in order to decide this case, because of deference to the difficulty of the subject, because full and adequate discussion is lacking in most of the cases decided up to the present time, and because by far the greater number of those cases, however broad their statement of the principle, are in fact cases of intentional rather than of negligent injury.

Coming now to the application of the rule to the facts of this case, it is apparent that the jury could find that the defendant was capable of entertaining and that she did entertain an intent to strike and to injure the plaintiff and that she acted upon that intent. See Am. Law Inst. Restatement: Torts, §§ 13, 14. We think this was enough.

The defendant further argues that she is not liable because the plaintiff, by undertaking to care for the defendant with knowledge of the defendant's condition and by walking into the room in spite of the defendant's threat under the circumstances shown, consented to the injury, or, as the defendant puts it, assumed the risk, both contractually and voluntarily. Without considering to what extent consent is in general a defence to an assault (see Am. Law Inst. Restatement: Torts, § 13), we think that the defendant was not entitled to a directed verdict on this ground. Although the plaintiff knew when she was employed that the defendant was a mental case, and despite some show of hostility and some violent and unruly conduct, there was no evidence of any previous attack or even of any serious threat against anyone. The plaintiff had taken care of the defendant for "fourteen months or so." We think that the danger of actual physical injury was not, as matter of law, plain and obvious up to the time when the plaintiff entered the room on the occasion of the assault. But by that time an emergency had been created. The defendant was breaking up the furniture, and it could have been found that the plaintiff reasonably feared that the defendant would do harm to herself. Something had to be done about it. The plaintiff had assumed the duty of caring for the defendant. We think that a reasonable attempt on her part to perform that duty under the peculiar circumstances brought about by the defendant's own act did not necessarily indicate a voluntary consent to be injured. Consent does not always follow from the intentional incurring of risk. "The degree of danger, the stress of circumstances, the expectation or hope that others will fully perform the duties resting on them, may all have to be considered." *Miner* v. *Connecticut River Railroad*, 153

Mass. 398, 403. *Powers* v. *Boston*, 154 Mass. 60, 63. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *Mahoney* v. *Dore*, 155 Mass. 513, 519. *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311. *McCarthy* v. *Morse*, 197 Mass. 332. *Barrett* v. *New England Telephone & Telegraph Co.* 201 Mass. 117, 119. *Osborne* v. *London & North Western Railway*, 21 Q. B. D. 220, 224. See *Linnehan* v. *Sampson*, 126 Mass. 506, 511; *Dixon* v. *New York, New Haven & Hartford Railroad*, 207 Mass. 126, 130; *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 49.

*Judgment for the plaintiff on the verdict.*

