299 So.2d 647 (1974)
Richard F. JOLLEY, Administrator of the Estate of Karen Ann Jolley, Deceased, Plaintiff,
v.
James POWELL, Defendant.
No. 73-789.
District Court of Appeal of Florida, Second District.
September 4, 1974.
*648 Otto E. Halboth of Earle, Earle & Bryson, St. Petersburg, for plaintiff.
Hugh E. Reams of Kiernan & Reams, St. Petersburg, for defendant.
McNULTY, Judge.
We answer today a question certified to us[1] by the Circuit Court for Pinellas County in this pending wrongful death action. The question certified is as follows:
IN AN ACTION FOR WRONGFUL DEATH, IS THERE AVAILABLE TO THE DEFENDANT THE AFFIRMATIVE DEFENSE OF INSANITY AT THE TIME OF THE ACT, CAUSING THE ALLEGED WRONGFUL DEATH.
The alleged facts underlying the question are that on October 28, 1972, the defendant James Powell shot and killed Karen Ann Jolley under most bizarre circumstances. He was acquitted of homicide "by reason of insanity" in a subsequent prosecution. This action followed.
At the outset, we restrict the scope of the question. We do so because, while Florida has not answered the precise question, the general rule in jurisdictions which have considered it make a distinction between insanity as a defense to an unintentional tort and as a defense to those torts requiring a specific state of mind which a defendant may be incapable of forming.[2] These latter would include, for example, actions based on deceit, malice or defamation. Therefore, since this action is based on a "wrongful act" or "negligence," as circumscribed by Florida's wrongful death act[3], we limit the scope of the question as relating to unintentional tort actions and answer the question in the negative.
It is surely not unusual in tort law nor indeed is it unfair that persons may be held responsible for failing to live up to a standard which, as a matter of fact, they cannot meet. As Justice Holmes observed:[4]
"The standards of the law are standards of general application ... It does not attempt to see men as God sees them, for more than one sufficient reason .. . [the awkward man's] slips are no less troublesome to his neighbors than if they sprang from guilty neglect."
And who would deny that the victim of a nuisance may have it abated regardless of the intent of the offending party?[5]
So liability without subjective fault, under some circumstances, is one price men pay for membership in society. The sane and the insane, the awkward and the coordinated are equally liable for their acts or omissions. In such cases we do not decide fault, rather we determine upon whom our society imposes the burden of redress for a given injury. As Holmes implied in his "awkward man" parable, a principle at *649 least co-equal with that of the fault principle in the law of torts is that the innocent victim should have redress.
Accordingly, most jurisdictions faced with the question here presented have decided that the insanity of a tortfeasor does not justify an exception to the general rule which holds a tortfeasor ordinarily to the objective, "reasonable man" standard. In doing so, those courts have generally refused to recognize such an exception because other principles inherent in the law of torts would be violated by relieving an insane person of his liability simply because he is incapable of "subjective fault." Among these other principles are that "where one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it,"[6] and that the burden of injury should be borne by that class of persons who had some power initially to prevent the injury suffered. This latter "class" would include, it has been held, those interested in an insane person's estate who would be in a position to gain economically by taking steps to protect society from such insane persons.[7] We agree with these cases.
In addition to the foregoing reasoning, we are also of the view that practical considerations in the administration of justice militate against unnecessarily injecting all of the confusion and potential for false claims inherent in the unsatisfactory tests of insanity in criminal cases into civil actions.[8] We therefore reiterate, when the predicate for a wrongful death action is unintentional tort the standard against which such tort is measured is the objective, "reasonable man standard" and the subjective state of mind of the tortfeasor is irrelevant.
In passing, we point out that we do not mean to say here that insanity would not be a defense to a claim for punitive damages. Our rationale would seem to suggest that such a defense would indeed be available in such cases.[9] We need not decide the point now, however, since punitive damages are not sought herein.
MANN, C.J., and GRIMES, J., concur.
NOTES
[1] Rule 4.6, F.A.R., 32 F.S.A.:

"(a) When Certified. When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction."
[2] See 49 A.L.R.3d 189; Prosser, Law of Torts, 3d ed. § 129; Restatement of Torts, 2d § 283.
[3] Section 768.16 et seq., F.S. 1972.
[4] Holmes, The Common Law 108 (1881).
[5] See Burnett v. Rushton (Fla. 1951) 52 So.2d 645.
[6] See, Seals v. Snow (1927) 123 Kan. 88, 90, 254 P. 348, 349. See, also Kuhn v. Zabotsky (1967) 9 Ohio St.2d 129, 224 N.E.2d 137.
[7] See, McGuire v. Almy (1937) 297 Mass. 323, 8 N.E.2d 760; Prosser, Law of Torts, 3d ed. § 129 p. 37.
[8] See, 49 A.L.R.3d 189; Prosser, Law of Torts, 3d ed. § 129.
[9] See, also, Parke v. Dennard (1928) 218 Ala. 209, 118 So. 396; Cross v. Kent (1870) 32 Md. 581.