489 So.2d 768 (1986)
PREFERRED RISK MUTUAL INSURANCE COMPANY, and Howard Cauvel, As Personal Representative of the Estate of Ronald L. Sanders, Appellants,
v.
Charlotte C. SABODA, As Personal Representative of the Estate of Stephen Saboda, Deceased, Appellee.
Nos. 84-1173, 84-1203.
District Court of Appeal of Florida, Fifth District.
April 24, 1986.
Rehearing Denied June 13, 1986.
*769 William A. Parsons of Leonhardt, Upchurch & Parsons, P.A., Daytona Beach, for appellant Cauvel.
Dennis B. Dore of Haas, Boehm, Brown, Rigdon & Seacrest, P.A., Daytona Beach, for appellant Preferred Risk.
Dwight Chamberlin of Dunn, Smith, Withers & Hart, Daytona Beach, for appellee.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The appellants, defendants below, have moved for an en banc rehearing of our affirmance of a judgment against them. We grant that motion and vacate the opinion filed in this cause on December 26, 1985. The facts, as alleged and established below, show that Saboda, a SWAT team member, was shot and killed by Sanders during a seige of the latter's home, after Sanders had shot and wounded another deputy. The shooting of the first deputy resulted in the call for the SWAT team. Sanders apparently had gone berserk as a result of drugs and emotional problems. After killing Saboda, Sanders killed himself.
Saboda's estate sued Sanders' estate and Sanders' carrier (per a homeowners policy), alleging that Sanders acted without regard for human life  and the adjective "wanton" was added to modify the word "negligence" by amendment at trial. Under the "firemen's rule,"[1] it was necessary for the plaintiff to establish that the shooting resulted from wanton negligence or wilful conduct by Sanders in order *770 to support a verdict against the latter. Price v. Morgan, 436 So.2d 1116 (Fla. 5th DCA 1983), review denied, 447 So.2d 887 (Fla. 1984).[2] However, if the shooting was an intentional act, the insurance policy provided no coverage. Hence, the plaintiff was confronted with a Catch-22 dilemma, since Sanders' estate apparently was insolvent. The plaintiff, therefore, attempted to distinguish between intentional acts and wanton negligence, avoiding the former for insurance purposes and urging the latter to satisfy the "firemen's rule."
The trial jury below returned the following interrogatory verdict answers, inter alia:
VERDICT
We, the Jury, return the following verdict:
1. Was there intentional conduct on the part of RONALD L. SANDERS which was the legal cause of the death of STEPHEN SABODA?
YES ____ NO X 
* * * * * *
2. Was there mental derangement on the part of RONALD L. SANDERS which prevented him from forming a rational intent?
YES X NO ____
* * * * * *
3. Was there negligence on the part of RONALD L. SANDERS, which was the legal cause of the death of STEPHEN SABODA?
YES X NO ____
Since the jury found no intentional conduct by Sanders resulting in Saboda's death, a finding of "wanton negligence"[3] was necessary for the plaintiff's judgment. But the issue of "wanton negligence" was not decided by the jury, the parties agreeing on an interrogatory verdict form in question number three that referred only to "negligence." The plaintiff/appellee contends on appeal that answer number three should be interpreted as a finding of wanton negligence based on estoppel. This ignores the fact that it was the burden of the plaintiff below to establish wanton negligence, not that of the defendants. If the plaintiff was wrongfully denied consideration of this issue by the verdict form, that point was not preserved by objection below or by cross-appeal. See Collard v. Keeton, 317 So.2d 121 (Fla. 3d DCA 1975).
In any event, question number three was rendered moot by the jury's answers to questions numbers one and two, determining that Sanders' conduct in killing Saboda was not intentional and that Sanders was mentally deranged to the extent he could form no rational intent. Obviously, a deranged person who cannot form a rational intent cannot be guilty of a wanton tort requiring a specific state of mind (actual or constructive malice)  the same "wanton negligence" required by the "firemen's rule." See Annot., 49 A.L.R.3d 189 (1973). The liability for compensatory damages of insane persons for their acts or omissions is based on public policy rather than traditional tort concepts of fault  but *771 that liability does not extend to punitive damages, nor can it be extended to any tort requiring wanton misconduct. See Jolley v. Powell, 299 So.2d 647 (Fla. 2d DCA 1974), cert. denied, 309 So.2d 7 (Fla. 1975). The rule is set forth in 41 Am.Jur.2d, Incompetent Persons § 104 (1968), which is based on common law:
An insane person is ordinarily liable for an injury caused by his tortious act, committed while he was insane, where malice or intent to injure is not a necessary element of the tort. The tort liability of an insane person is thus not measured by his criminal responsibility. Since a lunatic can form no design or intent, he is not liable for a tort of which malice or an intent to injure is a necessary element, nor may he be held for punitive damages, which depend on a showing of malice on his part. ... (Footnotes omitted.) (Emphasis added.)
Once the jury determined that Sanders was deranged, a verdict for the defense was mandated  unless we recede from the "firemen's rule" we approved in Price. Perceiving this dilemma, the plaintiff urges on appeal that we recede from our holding in Price, and abolish the "firemen's rule." To do so would place us in conflict with three other district courts in Florida, see Rishel v. Eastern Airlines, Inc., 466 So.2d 1136 (Fla. 3d DCA 1985); Wilson v. Florida Processing Co., 368 So.2d 609 (Fla. 3d DCA 1979); Whitten v. Miami-Dade Water & Sewer Authority, 357 So.2d 430 (Fla. 3d DCA 1978), cert. denied, 364 So.2d 894 (Fla. 1978); Hall v. Holton, 330 So.2d 81 (Fla. 2d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977); Adair v. The Island Club, 225 So.2d 541 (Fla. 2d DCA 1969); Romedy v. Johnston, 193 So.2d 487 (Fla. 1st DCA 1967), with dictum from the Florida Supreme Court, see Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472 (1940), and with the overwhelming weight of authority in the country. See Annot., 30 A.L.R.4th 81 (1984).
We decline to recede from Price and, therefore, reverse for entry of judgment for the defendants.
REVERSED.
COBB, C.J., and ORFINGER, UPCHURCH, SHARP and COWART, JJ., concur.
DAUKSCH, J., voluntarily recused from this case.
NOTES
[1] The "firemen's rule" is stated as follows:

Once upon the premises, the fireman or policeman has a legal status of a licensee and the sole duty owed him by the owner or occupant of the premises is to refrain from wanton negligence or willful conduct and to warn him of any defect or condition known to the owner or occupant to be dangerous, if such danger is not open to ordinary observation by the licensee.
See Price v. Morgan, 436 So.2d 1116, 1120 (Fla. 5th DCA 1983), review denied, 447 So.2d 887 (Fla. 1984); Whitten v. Miami-Dade Water & Sewer Authority, 357 So.2d 430, 432 (Fla. 3d DCA), cert. denied, 364 So.2d 894 (Fla. 1978).
[2] As we pointed out in Price, the "firemen's rule" is not intended to bar recovery for independent acts of misconduct which were not the cause of the fireman's or policeman's presence at the scene of the injury; the rule is applied to prohibit the fireman or policeman from recovering for injuries caused by the very misconduct which created the risk which necessitated his presence. This is the distinction between Price and our earlier decision in Whitlock v. Elich, 409 So.2d 110 (Fla. 5th DCA 1982). In Whitlock the policeman was not injured as a result of the risk which necessitated his presence on the premises  i.e., the risk of an intruder  but by an independent act of negligence of an owner of the premises in closing a window frame on the policeman's hand. In the instant case, it is uncontroverted that Saboda's presence at the Sanders home was necessitated by the very misconduct (a berserk gunman shooting at policemen) which subsequently caused his death.
[3] The term "wanton negligence" is not synonymous with "gross negligence," but with wilful and wanton misconduct sufficient to support a judgment for exemplary or punitive damages or a conviction for manslaughter. White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984); Carraway v. Revell, 116 So.2d 16 (Fla. 1959); see also Miller v. State, 75 So.2d 312 (Fla. 1954).