580 So.2d 273 (1991)
Edgar ANICET, Appellant,
v.
Preston GANT, Appellee.
No. 90-547.
District Court of Appeal of Florida, Third District.
May 14, 1991.
Rehearing Denied June 28, 1991.
*274 Ponzoli & Wassenberg and Richard Wassenberg and Steven B. Sundook, Miami, for appellant.
James C. Blecke, Miami, Benjamin D. Rust, South Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and NESBITT, JJ.
SCHWARTZ, Chief Judge.
This case comes straight from a difficult exam question in Torts I. We must decide whether a violently insane person confined to a mental institution is liable to one of his attendants for injuries caused by his violent act. Contrary to the result below, we hold that there is no such liability.
The legal problem comes to us on an undisputed factual record which imposes no tangential impediment to resolving it as a matter of law. The defendant-appellant, Edgar Anicet, is a twenty-three year old man, who has suffered from irremediable mental difficulties all his life. After intermittent treatment and hospitalizations both in this country and his native Haiti, he was involuntarily committed in 1986 under the terms of the Baker Act, sections 394.451-394.4785, Florida Statutes (1985), to the South Florida State Hospital, where he has remained ever since. Among the most severe features of his illness, manifested both before and during his hospitalizations, is an inability to control himself from acts of violence which specifically included throwing rocks, chairs and other objects at persons nearby. Largely because of that tendency, Anicet was confined to the hospital ward designed for the lowest functioning and most dangerous patients. On the day of the incident in question, January 15, 1988, he was present in a locked "day room" with some fifteen to twenty other patients on that ward.
The plaintiff-appellee, Preston Gant, was then an attendant, formally called a "unit treatment specialist," assigned by the hospital to Anicet's unit. His duties specifically included the treatment and, if possible, the control of patients like Anicet, of whose dangerous tendencies he was well aware. Indeed, the present incident began when, through a window of the day room, Gant saw Anicet throw a chair at a fellow patient. Gant went inside, tried to calm Anicet down, and warned him that if he did not do so, he would be confined to a "quiet room" in isolation. As Gant began to leave the day room, Anicet threw a heavy ashtray at his head and he was severely injured in twisting to avoid it.
In Gant's action for the resulting damages against Anicet,[1] both sides moved for summary judgment on the issue of liability for the intentional torts of assault and battery. The trial judge denied the defendant's motion but granted Gant's. After the jury fixed the amount of damages, Anicet has taken this appeal from the final judgment. We reverse with directions to enter judgment for the appellant.
*275 Few areas of the law of torts are so interesting, and therefore have proved so challenging, as the responsibility of insane persons for acts which would clearly be tortious if committed by the competent. See generally Ellis, Tort Responsibility of the Mentally Disabled, 4 Am.B.Found. Res.J. 1079 (1981); Siedelson, Reasonable Expectations and Subjects of Standards in Negligence Law: The Minor, the Mentally Impaired and the Mentally Incompetent, 50 Geo.Wash.L.Rev. 17 (1981). It has become well-settled in Florida and elsewhere that, as a rule, a lunatic is liable in the same generalized way as is an ordinary person for both "intentional" acts and "negligent" ones. Preferred Risk Mut. Ins. Co. v. Saboda, 489 So.2d 768 (Fla. 5th DCA) (negligent or intentional shooting death), review denied, 501 So.2d 1283 (Fla. 1986); Kaczer v. Marrero, 324 So.2d 717 (Fla. 3d DCA 1976) (assault and battery); Jolley v. Powell, 299 So.2d 647 (Fla. 2d DCA 1974) (negligence), cert. denied, 309 So.2d 7 (Fla. 1975); accord Seals v. Snow, 123 Kan. 88, 254 P. 348 (1927) (shooting death); Williams v. Kearbey, 13 Kan. App. 2d 564, 775 P.2d 670 (1989) (battery); Weaver v. Ward, 80 Eng. Rep. 284 (1616); see W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts § 135, at 1072 (5th ed. 1984). The expression "generalized way" and the quotation marks which surround the words "intentional" and "negligent," have been employed advisedly. This is because, as the authorities uniformly recognize, it is impossible to ascribe either the volition implicit in an intentional tort, the departure from the standard of a "reasonable" person which defines an act of ordinary negligence, or indeed any concept of "fault" at all to one who, like Anicet, is by definition unable to control his own actions through any exercise of reason. Preferred Risk, 489 So.2d at 771; Jolley, 299 So.2d at 648.
Instead, the conclusion that liability exists is founded squarely and acknowledgedly upon principles of good public policy which, it is held, are furthered by that conclusion. Almost invariably these considerations are stated to be:
(1) the notion that as between an innocent injured person and an incompetent injuring one, the latter should bear the loss[2]; and
(2) the view that the imposition of liability would encourage the utmost restriction of the insane person so that he may cause no unnecessary damage to the innocent.[3]Jolley, 299 So.2d at 647.
Because the circumstances of this case totally negate both of these asserted reasons for the rule, we conclude that the rule should not apply. We may approach our reasons for this conclusion in terms respectively of each of the two actors in this real life parable.
1. Gant The basic idea underlying the view that insane persons should pay for their own intentional acts even though they can form no intention to commit them and thus could not be deemed "guilty" of wrong in the normal sense is the belief that justice demands that, as between two human beings of equal moral responsibility and ability to protect themselves from a wrong, the one who at least causes it  who might be called the active damagefeasor  should be responsible. Seals, 123 Kan. at 90, 254 P. at 349. Our leading case of Kaczer v. Marrero, 324 So.2d at 719, which upheld the right of an innocent workman to recover from an unconfined insane person who stabbed him, is based upon just this consideration. It obviously does not apply to this case because unlike Marrero, Gant was not an innocent member of the *276 public unable to anticipate or safeguard himself against the intrusions of a lunatic. In all meaningful respects, his position was directly to the contrary: he was employed to encounter, and knowingly did encounter, just the dangers which injured him. Importantly, any economic loss caused by damage from one of those dangers is invariably borne, as it was in this case, by workers' compensation coverage. In these circumstances, we think that ordinary concerns of fundamental justice, far from indicating that Gant should be reimbursed for his loss by the tort system, require the opposite result.
In this respect, the familiar "fireman's rule" presents an apt analogy. Even putting aside the extensions of this rule which have found favor in Florida and other states, e.g., Kilpatrick v. Sklar, 548 So.2d 215 (Fla. 1989); Rosa v. Dunkin' Donuts of Passaic, 122 N.J. 66, 583 A.2d 1129 (1991), its very core is that a person specifically hired to encounter and combat particular dangers is owed no independent tort duty by those who have created those dangers  even though, unlike the insane, the landowner or other defendant is actually guilty of negligence or of other fault in creating the dangers. Thus, as is said in the leading case of Krauth v. Geller, 31 N.J. 270, 157 A.2d 129 (1960):
Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid.

* * * * * *
[T]he fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.
Krauth, 31 N.J. at 273-74, 157 A.2d at 131 (emphasis supplied); accord Young v. Sherwin-Williams Co., Inc., 569 A.2d 1173 (D.C.App. 1990); England v. Tasker, 129 N.H. 467, 529 A.2d 938 (1987); Maltman v. Sauer, 84 Wash.2d 975, 530 P.2d 254 (1975); Wright v. Coleman, 148 Wis.2d 897, 436 N.W.2d 864 (1989). The parallel, indeed the exact application of this doctrine to the present situation needs no further emphasis.
The same is true of the closely related doctrine that a landowner is not liable for negligently creating a condition to a contractor or other expert who was specifically hired to repair it. See Hickory House v. Brown, 77 So.2d 249 (Fla. 1955); Bowen v. Willard, 321 So.2d 595 (Fla. 1st DCA 1975), quashed on other grounds, 340 So.2d 110 (Fla. 1976); Chance v. Dallas County, 456 So.2d 295, 298 (Ala. 1984); Aspelin v. Mounkes, 206 Kan. 132, 476 P.2d 620, 624 (1970); Palenscar v. Michael J. Bobb, Inc., 439 Pa. 101, 266 A.2d 478, 480 (1970). See generally 41 Am.Jur. Independent Contractors § 28 (1968); 65A C.J.S. Negligence § 181 n. 81 (1966). Again, the employee is deemed not to be entitled to a tort recovery arising from a condition for the encountering and correction of which he is specifically paid. Neither should Gant.
2. Anicet We reach the same result upon analysis of the position of the other party to this dispute. It is first self-evident that the idea that imposing liability on an insane person will encourage those acting for him more carefully to safeguard others from his violence has no application whatever to this situation. Anicet, his relatives, and society did as much as they could do along these lines by confining him in the most restricted area of a restricted institution that could be found. Hence, it would serve no salutary purpose to impose the extra financial burden of a tort recovery.
As to the "fairness" issue, it is likewise clear that the imposition of liability would in fact counter our notions of what would be just to Anicet  who has no control over his actions and is thus innocent of any wrongdoing in the most basic sense of that term. The fireman's and contractor's rules *277 are instructive from his potential point of view as well. That aspect of these doctrines is based on the idea that, as a member of society or as an employer, one who has "paid" another to encounter a particular danger should not have to, so to speak, pay again for that very danger  even, as bears repeating, if he has been guilty of fault in creating it. Krauth, 31 N.J. at 270, 157 A.2d at 129. This principle doubly applies to the entirely blameless Anicet.
We are aware that the only cases which have specifically considered the obligation of an insane person to an attendant have reached results opposite to ours. We consider that these cases are decisively distinguishable either factually or doctrinally and, more significant, that they are ultimately unpersuasive. Mullen v. Bruce, 168 Cal. App.2d 494, 335 P.2d 945 (1959) involves an interpretation of a California Code provision, which has no Florida equivalent, which specifically states that "a ... person of unsound mind ... is civilly liable for a wrong done by him... ." Mullen, 168 Cal. App.2d at 496, 335 P.2d at 947. McGuire v. Almy, 297 Mass. 323, 8 N.E.2d 760 (1937) concerns a private nurse hired to care for the lunatic in her home and thus directly raises the "encouragement of further restriction" principle which is notably absent from this case. Finally, Van Vooren v. Cook, 273 A.D. 88, 75 N.Y.S.2d 362 (1947), is a three to two decision in which we think that the dissenting opinion is by far the better reasoned. We agree with the minority that:
While there can be no question of the rule that a lunatic is as responsible for assault and battery as a sane person, nevertheless, there can be no assault and battery where one voluntarily engages in an encounter in which that may inevitably result. Since one of the main reasons for imposing liability upon lunatics for their torts is that such a course tends to make those who should have an interest in the insane person, and so possibly interested in his property, watchful of him, certainly that basis is not present here. It seems harsh to impose upon Cook confined in an institution for the care of the insane the same rules of liability for his torts as would be imposed upon Cook allowed, unattended, to roam the streets.
Van Vooren, 273 A.D. at 94, 75 N.Y.S.2d at 367 (Taylor, P.J., and Larkin, J., dissenting) (citations omitted).
In sum, we revert to the basic rule that where there is no fault, there should be no liability. Since the reasons for the limited exception to this rule which have been adopted as to insane persons do not apply to the present situation, so the exception itself cannot do so. We emphasize that we deliberately do not put the doctrine of this case in terms of "assumption of risk," in the sense of that principle which refers to conduct of the plaintiff which bars reliance upon an otherwise existing tort. Kendrick v. Ed's Beach Service, Inc., 577 So.2d 936 (Fla. 1991). But see Burrows v. Hawaiian Trust Co., 49 Haw. 351, 417 P.2d 816 (1966) (applying assumption of risk doctrine to attendant-mental patient action). Rather we conclude that no duty to refrain from violent conduct arises on the part of a person who has no capacity to control it to one who is specifically employed to do just that. See, e.g., Robertson v. Deak Perera (Miami), Inc., 396 So.2d 749, 750 (Fla. 3d DCA 1981), review denied, 407 So.2d 1105 (Fla. 1981). On that holding, the judgment below is
Reversed.
NOTES
[1] The apparent reason for the maintenance of this action was the belief that Anicet was covered by his parents' homeowners liability policy. In the companion case of Sussex Mutual Ins. Co. v. Gant, 580 So.2d 277 (Fla. 3d DCA 1991), we have determined that the correctness of a circuit court's decision which upheld this conclusion is mooted by the present holding of no underlying liability. This decision, in turn, has not been influenced in any way by the availability or non-availability of insurance.
[2] "[W]here one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it." Seals, 123 Kan. at 90, 254 P. at 349.
[3] burden of injury should be borne by that class of persons who had some power initially to prevent the injury suffered. This latter `class' would include .. . those interested in an insane person's estate who would be in a position to gain economically by taking steps to protect society from such insane persons.
* * * * * *
[L]iability without subjective fault, under some circumstances, is one price men pay for membership in society.
Jolley, 299 So.2d at 647-48.