621 So.2d 684 (1993)
James S. COWEN, Appellant/Cross-Appellee,
v.
Todd M. THORNTON, Appellee/Cross-Appellant.
No. 92-01573.
District Court of Appeal of Florida, Second District.
April 14, 1993.
Rehearing Denied August 5, 1993.
*685 Warren J. Knaust of Knaust & Valente, P.A., St. Petersburg, for appellant/cross-appellee.
Stephen K. Stuart and Frank A. Miller of Stuart & Strickland, P.A., Tampa, for appellee/cross-appellant.
PARKER, Judge.
James S. Cowen appeals a final judgment entered for the defendant, Todd M. Thornton, on his claim for personal injury. We reverse and order a new trial on all issues.
Cowen was a treatment supervisor at Carlton Manor, a residential treatment facility for moderately disturbed young males. The facility, which contained no more than eight children at a time, housed the children from Sunday evening until Friday evening when the children were permitted to spend weekends at their homes. Cowen's complaint alleged that his lower back was injured in attempts to restrain Thornton, a fifteen-year-old facility resident, who was banging his head on a wall in a time-out room. Cowen's wife also filed an action for loss of consortium; however, she has dismissed her appeal. Thornton denied negligence, claimed Cowen was comparatively negligent or assumed the risk of injury, and argued that he owed Cowen either no duty or a lesser duty to refrain from the conduct which allegedly resulted in the injury.
The matter proceeded to a trial before a jury. The medical experts for both parties testified that Cowen was injured permanently. The only divergence in the expert *686 medical testimony related to causation. Cowen's treating orthopedic surgeon testified that the incident with Thornton at the facility caused Cowen's injury. The defendant's expert, a neurologist, testified that it was his opinion that Cowen's injury was not caused by the Thornton incident but from prior incidents unrelated to Thornton.
Cowen's uncontroverted medical expenses totaled $28,260.77. Cowen presented an economist who testified that Cowen's past economic loss was $84,214, not including medical expenses. The economist further testified that Cowen's future medical expenses, reduced to present value, would be from $147,853 to $187,137. The economist found that Cowen's future loss of earnings and earning capacity was from $619,263 to $645,167. Thornton's evidence did not rebut any of these amounts nor did it challenge Cowen's evidence concerning pain and suffering. Notwithstanding this evidence, the jury awarded zero damages.
The jury returned the following verdict:
 VERDICT
 We, the jury, find as follows:
 1. Was there negligence on the part of the Defendant, Todd Thornton, which
 was a legal cause of damage to the Plaintiff, James S. Cowen.
 YES X NO _____
 If your answer to question 1 is NO, your verdict is for defendant. Do
 not answer any of the other questions on this form. The foreman must
 date and sign this form and return it to the courtroom. If your
 answer to question 1 is YES, answer question 2.
 2. Was there negligence on the part of Plaintiff, James S. Cowen, which
 was a contributing legal cause of the damage complained of.
 YES X NO _____
 If your answer to question 1 is NO, do not answer question 3. Answer
 questions 4, 5, 6, and 7. If your answer to question 2 is YES, answer
 the remaining questions.
 3. What is the percentage of negligence that was a legal cause of
 plaintiff's damage on the part of each party?
 Defendant 25%
 Plaintiff 75%
 The total must equal 100%
 By answering the following questions you will determine the damages, if
 any, that James Cowen and Teresa Cowen sustained as a result of the
 incident in question. Do not reduce any amount because of the
 negligence of the plaintiff. The court will make that computation.
 4. What is the amount of any damages sustained for medical expenses and
 lost earnings or earning ability in the past?
 $ 0 
 5. What is the amount of any future damages for medical expenses and lost
 earning ability to be sustained in future years?
 a. Total damages over future years? $ 0 
 b. The number of years over which those future damages
 are intended to provide compensation? 0 
 c. What is the present value of those future damages? $ 0 
 6. What is the amount of any damages for pain and suffering, disability,
 physical impairment, disfigurement, mental anguish, inconvenience,
 aggravation of a disease or physical defect, or loss of capacity for
 the enjoyment of life,
 a. In the past? $ 0 
 b. In the future? $ 0 
 TOTAL DAMAGES OF JAMES COWEN $ 0 
*687
 7. What is the amount of any damages sustained by Teresa Cowen in loss
 of her husband's services, comfort, society and attentions,
 a. In the past? $ 0 
 b. In the future? $ 0 
 TOTAL DAMAGES OF TERESA COWEN $ 0 
Cowen filed motions for additur and for new trial. The trial court denied the motions and entered final judgment in favor of Thornton. We conclude that the failure to grant a new trial was error.
The proper method to challenge an inadequate verdict is to file a motion for new trial. See, e.g., McCloud v. Sherman Mobile Concrete Co., 579 So.2d 773 (Fla. 2d DCA 1991); State Farm Mut. Ins. Co. v. Howard, 458 So.2d 874 (Fla. 2d DCA 1984). Generally a plaintiff cannot be awarded zero damages when he has suffered some damages from the negligence of the defendant. McCloud; Howard. When a damage award is clearly inadequate and the issue of liability was contested, it gives rise to a suspicion that the jury may have compromised its verdict. Watson v. Builders Square, Inc., 563 So.2d 721 (Fla. 4th DCA 1990).
In the instant case, Thornton did not challenge the amount of damages but only the fact that Thornton caused them. The jury, however, specifically found that Thornton's actions did cause Cowen's damages. Based upon this evidence and the jury verdict, we are compelled to grant a new trial for Cowen. Because the liability issue was vigorously contested, the new trial must be on the issues of liability and damages. See Williams v. Ragsdale, 500 So.2d 314 (Fla. 2d DCA 1986) (a defendant's liability must not be in substantial dispute in order to grant a new trial on damages only), review denied, 506 So.2d 1042 (Fla. 1987).
Thornton argues that Cowen failed to preserve this error because Cowen did not bring the inconsistency of the verdict to the trial court's attention before the jury was discharged. This court, however, has ruled previously that there is no waiver of this issue when the plaintiff has filed a motion for new trial which challenged a zero verdict after a jury found liability. Surety Mortgage, Inc. v. Equitable Mortgage Resources, Inc., 534 So.2d 780 (Fla. 2d DCA 1988).
Thornton has filed a cross-appeal, contesting the trial court's denial of his motion for directed verdict. Thornton, relying on Anicet v. Gant, 580 So.2d 273 (Fla. 3d DCA), review denied, 591 So.2d 181 (Fla. 1991), argued that he owed Cowen no recognizable duty to refrain from the conduct which allegedly caused Cowen's injury.[1] In Anicet, a patient was committed involuntarily to a state hospital, manifesting behavior including an inability to control himself from acts of violence which included throwing rocks, chairs, and other objects at nearby persons. While there, the patient injured Gant, a hospital attendant. The third district framed the issue as "whether a violently insane person confined to a mental institution is liable to one of his attendants for injuries caused by his violent act." Anicet, 580 So.2d at 274. The court stated: "[W]e conclude that no duty to refrain from violent conduct arises on the part of a person who has no capacity to control it to one who is specifically employed to do just that." Anicet, 580 So.2d at 277.
This case is distinguishable on its facts from Anicet. First, the evidence viewed in the light most favorable to Cowen,[2] *688 did not show that Thornton was a violently insane person or that he lacked the capacity to control his violent behavior. Cowen described Thornton's problems as passive/aggressive behavior, poor impulse control, and attention deficit disorder. Cowen testified that Thornton had no history of violent acting-out toward adults. Further, Carlton Manor was a substantially different facility than a mental institution. Thornton and the other clients were at Carlton Manor voluntarily. Cowen testified that Carlton Manor did not accept clients with a history of violence. Additionally, Thornton was not confined to the facility in that he attended public school daily and returned home on weekends. We find that these facts distinguish this case from Anicet and hold that the trial court did not err in refusing to direct a verdict in favor of Thornton on this issue.
We reverse and remand this case for a new trial on the claim of James S. Cowen.
FRANK, A.C.J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
The jury's verdict in this case is both inconsistent and inadequate. Because the jury answered a special interrogatory verdict form, it expressly found that the defendant's negligence was a legal cause of damage, and then awarded no damages. If the plaintiff had objected to this patent inconsistency before the jury was discharged, the jury could have been reinstructed and may have reached a legal verdict.
It has long been the general rule that a party is obligated to object to an inconsistent verdict prior to discharge of the jury, but may challenge an inadequate verdict by post trial motion. Nix v. Summitt, 52 So.2d 419 (Fla. 1951); Higbee v. Dorigo, 66 So.2d 684 (Fla. 1953); Cowart v. Kendall United Methodist Church, 476 So.2d 289 (Fla. 3d DCA 1985). In the past, the typical general verdict form stated: "We find for the plaintiff and assess damages at $ ____." When the jury awarded zero damages on such a verdict form, the result was not patently inconsistent. In such circumstances, it was not illogical to permit a posttrial challenge to the substance of a verdict in the absence of a prior challenge to the verdict's procedural accuracy.
Since the enactment of section 768.77, Florida Statutes (1991), most tort cases are now submitted to the jury with an interrogatory verdict form that usually causes a zero verdict to be both inconsistent and inadequate. I am inclined to believe that a party who wishes to appeal such an erroneous verdict should be required to preserve the error by an objection prior to discharge of the jury.
In light of the existing case law, however, plaintiff's trial counsel had no reason to believe a timely objection was necessary to challenge the inadequate verdict posttrial. Especially when neither the trial judge nor defense counsel raised this problem before the jury was discharged, I do not believe it would be appropriate in this case to require the plaintiff to have objected to the verdict prior to discharge of the jury. Compare Savoca v. Sherry Frontenac Hotel Operating Co., 346 So.2d 1207 (Fla. 3d DCA 1977) (the Savocas waived challenge to zero verdict on basis that it was inconsistent where they did not object when verdicts were published, and successfully fought defendant's own timely challenge to verdicts as inconsistent) with Cowart (distinguishing Savoca, in part, on basis that the Savocas defended challenge to verdicts as inconsistent).
NOTES
[1] This affirmative defense commonly is known as the fireman's rule, which provides that no duty is owed to the fireman to "exercise care so as not to require the special services for which he is trained and paid." Anicet, 580 So.2d at 276 (quoting Krauth v. Geller, 31 N.J. 270, 273-74, 157 A.2d 129, 131 (1960)) (emphasis supplied in Anicet).
[2] When considering a motion for directed verdict, the court must assume that the nonmoving party's evidence and all reasonable inferences therefrom are true. Powell v. Napolitano, 578 So.2d 747 (Fla. 2d DCA 1991).