Kottmyer, Diane M., J.
INTRODUCTION
The plaintiff, Mary Ellen Gioia (“Gioia”), a registered nurse at the Holy Family Hospital (“the Hospital”), filed this action seeking damages for personal injuries she suffered when she was treating a patient, defendant Richard D. Ratner (“Ratner”). She alleges that Ratner negligently injured her and that the defendant, Ann L. Ratner, his wife and health-care proxy, negligently refused to permit the Hospital to administer antipsy-chotic medication.
The defendants have moved for summary judgment in favor of Ratner on the grounds that he was suffering from anesthesia-induced delirium at the time of the assault and therefore could not be found to have acted intentionally or negligently, and in favor of Ann Ratner on the grounds that she never instructed the Hospital not to administer antipsychotic medication and, in any event, did not owe a duty to the plaintiff. A hearing on the motion was held on June 28, 2016. For the following reasons, the defendant Arm Ratner’s motion for summary judgment is ALLOWED and the defendant Richard D. Ratner’s motion for summary judgment is DENIED.
SUMMARY JUDGMENT RECORD
The undisputed facts in the summary judgment record and inferences therefrom, viewed in the light most favorable to plaintiff, are as follows.
Ratner underwent surgery at the Massachusetts General Hospital (“MGH”) on September 19,2012. (Ex. 6.) After the surgery, he suffered from confusion, delirium and hallucinations. (Id.) On September 28, 2012, he was transferred from MGH to the Northeast Rehabilitation Hospital. While there, his delirium and confusion persisted and he was medicated with Risperdal and Haldol. (Id.) He was transferred to the Hospital on October 3, 2012, “with sudden onset of confusion and delirium requiring 1 milligram of Haldol for which [sic] he was being aggressive with the nursing staff pushing the staff and furniture away.” (id.) Later that day, Ratner was admitted to the Hospital with a plan of care to “keep him on 1:1 sitter”[1] and “continue on antipsychotics p.r.n. [as needed] for agitation.” (Id.)
At 7:00 p.m. on October 3,2012, Gioia was the charge nurse on the floor to which Ratner was transferred and the nurse assigned to take care of him. The floor usually handled medical/surgical and oncology patients. Gioia reviewed Ratner’s records and she printed out his admission notes. She was aware that he had been combative before coming to the Hospital and understood combative to mean “hitting, punching and kicking.” (Ex. 4,157-59.) Gioia had dealt with confused and combative patients and had restrained patients in the past. (Ex. 4 at 25-25.) Gioia had a conversation with Ratner’s son, Michael Ratner, who told Gioia that “as far as giving him anything for the confusion, my family’s wishes and my mother and I do not want to have anything... to make him any more confused.” (Id at 130-31.) Gioia does not think that she left Michael with the impression that “that I wouldn’t, because every—I probably said, ‘I’ll try my best.’ ” (Id. at 135.) Gioia did not speak with Ann Ratner (Id at 136.)
Ratner became increasingly agitated as the night went on. Between 11:00 p.m. and 12:00 a.m., Gioia *509 called the first of four “Code Grays.”[2] Ratner was seen by a physician (the “Hospitalist”) as well as by the nursing supervisor each time a Code Gray was called.
While the sitter was at lunch, Gioia covered for her and sat with Ratner. At about 2:00 a.m., Ratner “grabbed plaintiffs arm and twisted it up behind her head.” Gioia called a Code Gray. (Id, 188-89.) The Hospitalist, other nurses and security responded to the Code Gray. The Hospitalist spoke with Michael Ratner by telephone (id., 174-75), and at 2:11 a.m., Ratner was given an injection of 2.5 milligrams of Haldol. (Ex. 7.) Gioia was injured but she did not go to the Emergency Room at that time because she was on duty. (Ex. 4 at 184.)
At 4:30 a.m. the third “Code Gray” was called. Security responded and took Ratner to the bathroom. He then went to sleep. (Ex. 8.) Minutes later a fourth Code Gray was called. Security responded and reported Ratner had “strangled [the sitter] and hurt [plaintiff]." (Ex. 4 179-82; Ex. 8.) At 5:20 a.m., Ratner received an injection of Benadryl and at 5:21 a.m. another injection of Haldol. The plaintiff went to the Emergency Room at about 5:00 a.m. (Ex. 4 at 206.)
Ann Ratner was Ratner’s health-care proxy. There is no evidence in the record that she instructed Hospital personnel not to administer Ativan, Haldol or any other medication to Ratner.
DISCUSSION
Summary judgment is appropriate when the record reveals “there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.R 56(c); Siebe, Inc. v. Louis M. Gerson Co., 74 Mass.App.Ct. 544, 548 (2009). The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The non-moving party cannot defeat the motion for summary judgment by resting on its pleadings; rather, it must respond by alleging specific facts demonstrating the existence of a genuine fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The court views the evidence in the light most favorable to the non-moving party, but does notweigh evidence, assess credibility, or find facts. Drakopoulos v. United States Bank Nat’l Ass’n, 465 Mass. 775, 788 (2013), quoting O’Connor v. Redstone, 452 Mass. 537, 550 (2008).
A. Ann Ratner
There is no evidence that Ann Ratner spoke with Hospital staff concerning Ratner’s medications. Consequently, even if plaintiff could establish that Ann Ratner owed a duty to nurses who were caring for Ratner, her claim would fail for lack of evidence. Accordingly, Ann Ratner’s motion for summary judgment is allowed.
B. Richard Ratner
Relying on the principle that an operator who lost control of his vehicle as a result of a sudden and unforeseeable seizure was not negligent, see McGovern v. Tinglof, 344 Mass. 114, 118-19 (1962),[3] the defendant argues that because Ratner was suffering from delirium, he cannot be held liable to plaintiff. However, a different rule applies in the case of a mentally disabled adult. The Restatement (Third) of Torts, Liability for Physical and Emotional Harm, § 11(c) (2010) (“Restatement Third”) states the general rule relating to the liability of a disabled adult for negligence. It provides: “An actor’s mental or emotional disability is not considered in determining whether conduct is negligent unless the actor is a child.” In comment (e), the drafters reiterate that for adults, as opposed to children, mental or emotional disability is “typically disregarded in considering whether the person has exercised reasonable care” and that this position was taken in the Restatement Second of Torts and “is supported by a consistent line of cases.”[4]
The seminal case, McGuire v. Almy, 297 Mass. 323 (1937), concerned a claim for assault and battery. The plaintiff, a private duty nurse hired to care for a mentally disabled person in her home, was injured when the patient struck her in the head with a piece of furniture. Justice Qua stated the general rule and noted that it had been “criticized severely” as inconsistent with “modem theory that liability in tort should rest upon fault.” Id. at 327. Nonetheless, he held that in the circumstances “where an insane person by his act does intentional damage to the person of another, he is liable for that damage in the same circumstances in which a normal person would be liable.” Id at 328.[5] He explained:
This means that in so far as a particular intent would be necessary in order to render a normal person liable, the insane person, in order to be liable, “must have been capable of entertaining that same intent and must have entertained it in fact.” The law will not inquire further into his peculiar mental condition with a view toward excusing him if it should appear that delusion or other consequences of his affliction has caused him to entertain that intent or that a normal person would not have entertained it.

Id.

The rule imposing liability without fault for torts committed by a mentally disabled person is generally justified on the following policy grounds. First as between two innocent persons, the one whose act caused the injury should bear the loss. Second, the rule avoids difficult evidentiary problems inherent in attempting to estimate the existence and extent of a person’s mental deficiency. Finally, imposing liability encourages those responsible for incompetent people to provide care for them so as to avoid injury to others. See Note, Rejecting the Logic of Confinement Care Relationship and the Mentally Disabled Under Tort Law, 109 Yale L.J. 381, 386-92 (1999-2000).
The issue whether an insane person is civilly liable for intentional or negligent acts causing injury to others has not been directly addressed by the Supreme Judicial Court since McGuire was decided.[6] *510 Several courts which have addressed the issue have deviated from the general rule in the case of institutionalized mentally disabled patients (typically advanced Alzheimer’s patients) unable to control or appreciate the consequences of their conduct who caused injury to caregivers who were employed care for them.[7] Courts have reasoned that it is unfair to charge the defendant with a duty of care to prevent injury to the plaintiff that arises from the very risk of harm the plaintiff and her employer were hired to prevent. This exception commonly referred to as the “caretaker exception” has also been justified on the grounds that public policy favors imposing the risk on the employer who is “in the best position to protect against the risks to the provider rooted in the very reason for the treatment.” Herrle, 53 Cal.Rptr. at 719.
In the present case, Ratner was hospitalized, was suffering from postoperative dementia and Gioia was employed to care for him. However, no case has been found expanding the caretaker exception to encompass nurses caring for mentally disabled patients in a typical hospital setting. Accordingly, Ratner’s motion for summary judgment must be denied. Although, based on the summary judgment record, it is undisputed that Ratner failed to exercise reasonable care for Gioia’s safely and injured her, factual issues remain as to whether Gioia was negligent and, if so, the percentage of responsibility allocable to each. While Ratner’s mental disability does not affect the objective standard of care that applies to him as either a plaintiff or defendant, it is a circumstance to be taken into account in determining whether Gioia exercised reasonable care for her own safely. See comment (e) to section 11(c) of the Restatement Third (“[D]isability can be considered in the course of the more open-ended process of apportioning percentages of responsibility between plaintiff and defendant”). There are therefore material questions of fact as to comparative negligence, as well as damages.
CONCLUSION AND ORDER
For the reasons stated herein, it is ORDERED that Ann Ratner’s motion for summary judgment is allowed and judgment shall enter in her favor. The defendant Richard D. Ratner’s motion for summary judgment is denied.
The reasoning that ordinarily justifies disregarding those disorders is largely designed to protect the interests and safety of innocent third parties, and to protect even negligent third parties from bearing excessive liabilities. When the plaintiff and the defendant are bound together in an ongoing economic relationship, this reasoning diminishes in force. Thus, if the plaintiff is a health-care professional who has been hired to take care of the person whose emotional disability makes the patient dangerous to others, the plaintiff cannot complain if injured by the very condition that gives rise to the plaintiffs employment.

 A “sitter” is a person assigned to sit in the hospital room with the patient.

 “Code Gray” is a call for assistance from security and other personnel.

 The plaintiff cites Carroll v. Bouley, 338 Mass. 625 (1959), in which the Court reversed a directed verdict for the defendant holding that in the circumstances of that case it was a question of fact whether a sudden and unforeseeable physical seizure rendered an operator unable to control his vehicle.

 In comment (e), the drafters explain:

 Gioia asserts a claim for negligence and Justice Qua did not address “wrongs commonly classified as negligent,” due, in part, to “deference to the difficulty of the subject.” He noted that “(a]s a general mle, courts hold an insane person liable for his torts and make no distinction between intentional and negligent torts” and that “by far the greater number of cases, however broad their statement of principle, are in fact cases of intentional rather than negligent injury.” Id. at 326, 328. The same is true of this case.

 In Swift v. Fitchburg Mut Ins. Co., 45 Mass.App.Ct. 617, 623 n.9 (1998), the Court of Appeals noted that “as a general rule, mentally disabled persons are liable for their torts (they are held to a standard of a reasonable person with circumstances).” The Court cited the discussion by Justice Qua in McGuire v. Almy, 297 Mass. 323 (1937).

 Berberian v. Lynn, 355 N.J.Super. 210, 45 A.2d 865 (2002) (“[T]he professional caregiver may not recover for the conduct of a patient when this conduct is, in part, the reason for the caregiver’s role”); Creasy v. Rusk, 730 N.E.2d 659 (Ind. 1998) (Alzheimer’s patient who does not have the capacity to control his behavior owes no duty to his nursing assistant to refrain from violent behavior because the relationship between the parties, as well as public policy considerations, weigh against imposing liability; mental capacity of defendant is a question of fact); Colman v. Notre Dame Convalescent Home, Inc., 968 F.Sup. 810 (D.Conn. 1997) (In the case of negligence, as opposed to intentional torts, no duty arises between institutionalized patient and caregiver); Herrle v. Estate of Helen I. Marshall, 45 Cal.App. 4th 1761, 1770-72, 53 Cal.Rptr.2d 713, 716 (1996) (Institutionalized Alzheimer’s patient does not owe a duty to healthcare provider who is in the best position to prevent risk of injury where risk is rooted in reason for treatment); Gould v. American Family Mut. Ins. Co., 198 Wis.2d 450, 543 N.W.2d 282, 286 (1996) (Institutionalized Alzheimer’s patient could not be held liable for injuring a nurse employed as a caretaker specifically for dementia patients). Anicet v. Gant, 580 So.2d 273 (Ha.Dist.App. 1991) (Person who has no capacity to control his conduct does not owe a duty to person specifically employed to treat him).